#### LAMBERT et al. v. WILLIAMS LIME MFG. CO.

No. 243.

District Court, E. D. Tennessee, N. D.

Aug. 14, 1940.

Donaldson & Montgomery, of Knoxville, Tenn., and Cyrus Kehr & Swecker, of Washington, D. C., for plaintiff.

Frantz, McConnell & Seymour, of Knoxville, Tenn., and Cameron, Kerkam & Sutton, of Washington, D. C., for defendant.

DARR, District Judge.

This is a suit by the plaintiffs against the defendant for infringement of letters patent No. 2,062,227 granted to Walter E. Lambert on November 24, 1936, and which matured from an application filed July 9, 1934.

In this case the original suit was brought by Walter E. Lambert in July, 1937, charging infringement of claims 1, 2, 3, and 9 to 17, inclusive, of said patent, and prayed

not only for an injunction against the defendant, but also for an accounting of profits and/or damages.

Defendant filed its answer in October, 1937, denying most of the allegations of the complaint and setting up many of the usual defenses.

In December, 1938, plaintiffs filed an amended supplemental complaint setting forth, among other things, the acquisition of an interest in said patent by McMurray Structural Steel Company, Inc., since the institution of the suit and including it as a party plaintiff to the suit. That complaint was filed under order of this court, the defendant consenting.

Defendant thereafter in June, 1939, by order of the court and with the consent of the plaintiffs, amended paragraph 11, subparagraph (a), of its answer by adding the citations of certain prior art upon which it expected to rely.

It was agreed by counsel in this case that the evidence introduced in the related case of Lambert et al. v. Dempster Brothers, Inc., et al., 34 F.Supp. 610, heretofore tried in this court, in so far as it is pertinent to the issues of the present case under the pleadings, shall be considered as a part of the record herein.

Under the stipulation there appears to be involved only one form of alleged infringing device for consideration of the court. This form is exemplified by Exhibits "A", "B", "C", and "D".

In the opinion of this court in the Dempster case it was pointed out that the patent in suit related to motor vehicles with detachable skips for use principally at quarry and other similar places for transporting crushed rock or other materials in bulk from the quarry to the crusher, kiln, or other desired place for further processing, use, or storage. It was found that patentee's improvements related primarily to the provision of a skid frame on the motor vehicle and giving it a new cooperation with a novel skip whereby the skip could be filled to capacity and successfully transported for considerable distances over rough roads without danger of loss of material. There are, however, other novel features in that invention, but it will be unnecessary to consider all of them in this case.

The alleged infringing structure has been in substantially continuous use since 1935. It is employed to transport rock or stone from a quarry to the kilns. At the quarry the skips are filled with stone and upon reaching the kilns the skip is detached from the motor vehicle and is usually transported by a derrick to the point desired where it is dumped in the manner illustrated by the exhibits above referred to. More specifically, a motor vehicle is provided with a slanting skid frame mounted on the rear end of the vehicle frame or chassis and having braces extending from the upper ends of the skid frame downwardly to and engageable with the central or front portion of the vehicle frame. Bridging the upper ends of the skid frame is a shaft upon which are mounted cable guides for directing the lifting cables which extend from the skip to the winding drum or other lifting means, as shown in Exhibit "B". The rear wall of the skip is slightly inclined to engage and cooperate with the inclined skid frame to maintain the top of the skip in as nearly a horizontal position as possible to prevent spilling of the contents thereof and to utilize the full capacity of the skip. To the upper and lower portions of its end walls are secured cable attaching means. The upper ones serve in lifting the skip against the skid frame when transporting it from the quarry to the kilns, as shown in Exhibits "B" and "D", and the lower ones serve to tilt the skip during the dumping operation as shown in Exhibit "A".

Referring to the claims in suit, the court is of the opinion that claims 12, 13, 14, 16, and 17, drawn to the combination heretofore described, and claims 11 and 15 drawn to the skip per se, are infringed by defendant.

With the rule in mind that in order for infringement of a claim to occur the device under consideration must satisfy the claim, element for element, and limitation for limitation, and that in construing the terms of a claim due consideration should be given the prior art and the history of the prosecution of the case before the Patent Office to ascertain the scope of the invention, the court will apply the representative claim 13 to the combination under consideration.

Exhibit "B" clearly discloses a conveying apparatus with a motor vehicle chassis having an upright skid frame on the rear end thereof. The skip shown has a flat bottom adapted to rest on the ground as seen in Exhibit "D". This is true during the time of filling as well as before dumping. The

skip, of course, has a back and two end walls, and there is a front wall on the opposite side from the skid frame over which dumping occurs as is apparent from Exhibit "A". Flexible cables are carried by the chassis rearwardly of the skip and have means for detachable connections with the end walls of the skip and are seen to be the cross arm, links, bolts, and clamps shown in Exhibit "B". After filling, they serve to elevate the skip along and against the skid frame and act to hold the skip thereagainst during transportation, as is also shown in Exhibit "B". Guide means in the form of rollers over which the lifting cables are guided are also found to be on the chassis, positioned rearwardly of the skip, as shown in Exhibits "B" and "D". Cable means clearly extend forwardly from the rollers approximately to the detachable connections. The means for tilting the skip forwardly are the cable attaching means on the lower portion of the end walls of the skip, previously discussed.

Defendant contends that in view of the preferred embodiment of the invention disclosed in the drawing of the patent in suit this court should read into the claims the limitation that these detachable cable means must be engaged by the cables of the motor vehicle during the dumping operation and that since defendant contemplates the hitching of cables of a derrick thereto, no infringement exists. This argument, however, is without merit for these claims are not so limited in their terms, nor does the prior art justify such restricted interpretation. So far as the claims are concerned it is immaterial what, if any, other elements cooperate with the cable attaching means which tilt the skip. Furthermore, in defendant's combination the cables on the vehicle can and are adapted to cooperate with the tilting means as well as any other appropriate elements such as a derrick, disclosed in the exhibit heretofore referred to.

As already indicated, the other combination claims may be applied to defendant's structure in substantially the same manner, but it may·be pointed out in connection with the last limitation in claim 12 that it specifically recites, "The dumping attachments being *adapted* to be engaged by the cables for tilting the skip for dumping." The claim is not therefore restricted to actual engagement with the cable means of the vehicle or any other device for carrying out this function. This limitation

is therefore clearly satisfied by the device of defendant.

The validity of all of these claims except claims 12 and 17 has previously been considered at length in the Dempster case where it was found that they were valid. On further consideration no reason is seen to change the court's position on the validity of these claims. Both claims 12 and 17 appear to be more specific than those claims already considered, especially in the recitation in claim 12 of such novel features as the particular shape of the skip in relation to the skid frame which prevents spilling. It is therefore believed that these latter claims are also valid.

Referring to claims 11 and 15, also infringed by defendant's device, it is only necessary to generally apply claim 11 to clearly establish the infringement. Exhibit "B" clearly shows a skip having front and rear walls slanting away from each other, or in opposite directions. The end walls have a pair of cable attachments·secured thereto or mounted thereon. They are so positioned that one is near the top and the other is near the bottom. The bottom attachment is near the back of the skip, and it is certainly *adapted* to be engaged by a cable which is used alternately to transport and dump the skip, or for engagement with a cable used for any other similar purpose.

While a combination of elements may be new and patentable, it does not follow that the individual elements themselves are necessarily novel and patentable. However, it is believed that the skip element defined in claim 11 clearly distinguishes in a patentable respect from the prior art and otherwise constitutes patentable subject matter. The skip defined in the claim is so shaped as to have a new cooperation with the skid frame, and solves a particular problem. It defines over the art in this respect, is not such a modification as would be apparent to one skilled in the art, and is therefore believed to be patentable.

On the other hand, claim 15 is so broad that it defines a skip or bucket having general usefulness and is found to be anticipated by and therefore unpatentable over the patent to McCoy 546,426 not cited by the Examiner during the prosecution of the case before the Patent Office. Referring particularly to Figures 2, 4, and 5 of that patent it is seen that the skip or bucket F has ·front and rear walls, and a flat bottom for resting on the ground or

other appropriate supporting surface during filling. The end walls have means f attached thereto adjacent the upper edges thereof in position for detachable fastening of cables $C^3$ for transporting the skip, and the end walls also have attachments $f^1$ adjacent the lower portion thereof in position for detachable fastening of means $G^1$ for dumping the skip. Accordingly this claim must be held to be void.

For all of the foregoing reasons claims 11, 12, 13, 14, 16, and 17 are found to be valid and infringed.