## DAVID P. TODD

### *v.*

## LEAH TODD.

*Opinion filed April 17, 1906.*

1. WILLS—*mental condition shown to exist is presumed to continue.* A mental condition of the testator once shown to exist is presumed to continue if it is of a continuous nature; but there is no presumption that a mental condition connected with a new and impaired physical state, arising after the execution of the will, existed previously.

2. SAME—*condition of the testator after making will cannot be shown if it is a new condition.* The mental condition of the testator after the will has been executed can be shown only where the evidence will tend to show his condition at that time, and not if the subsequent condition appears to have arisen from a new cause which was not in operation when the will was executed.

3. SAME—*when testator has sufficient testamentary capacity.* If the testator's mind and memory at the time he executes his will are sufficiently sound to enable him to intelligently understand the business he is engaged in, he has the testamentary capacity required by the law.

4. SAME—*when refusal to give instruction that it is an executor's duty to defend the will is error.* Refusal to give an instruction in a will contest that it was the duty of the executor to defend the will is error, even though the executor made no objection to an unwarranted attack upon him by counsel for the complainant, who stated that all parties desired to have the will set aside except the executor, who wanted his commissions for managing the estate as executor and trustee.

5. SAME—*proponent is entitled to benefit of the presumption of soundness of mind.* Under the issue of want of testamentary capacity made on a bill to contest a will, the burden is on the party asserting the validity of the will to make proof of testamentary capacity; but when such proof is made, the law adds the presumption of sound mind, which applies to all men, and the evidence of want of testamentary capacity must be sufficient to neutralize both the testimony in favor of testamentary capacity and the presumption of law.

6. SAME—*testator is presumed to know contents of will which he signed.* A testator is presumed to have understood the nature and contents of the will which he signed, and proof of his signature

to the will is, as a general rule, *prima facie* proof that he understandingly executed the same.

7. SAME—*when instruction as to burden of proof is erroneous.*
An instruction directing the jury to find the instrument in contest is not the will of the testator if they believe, from the evidence, that the evidence is evenly balanced upon the question whether he understood the nature and effect of the said supposed will at the time the same was executed, is erroneous, in failing to give the proponents the benefit of the presumptions of law.

APPEAL from the Circuit Court of Coles county; the Hon. JAMES W. CRAIG, Judge, presiding.

JOHN FAVORITE, VOIGT & BENNETT, and H. A. NEAL, for appellant.

J. K. RARDIN, J. H. MARSHALL, and A. J. FRYER, (J. S. HALL, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 26, 1901, Asahel J. Todd, of Coles county, executed his last will and testament, disposing of an estate of about $60,000. He had a wife, Artie Todd, and one child, the appellee, Leah Todd, then about three years old. By the will he gave to his wife all his household and kitchen furniture, $2000 in cash and all his real estate situated in the village of Lerna, and provided for her support, as hereinafter stated. All his remaining property was devised to his executors in trust for a period of twenty years, during which they were to manage the estate according to directions given in the will and pay to his wife a sum sufficient for the support and maintenance of herself and the child, or, in case the wife should die before the termination of the trust, they were to pay to the child, Leah Todd, or her guardian, a proper sum for her support and education, and at the termination of the trust the property was to go to the legal heirs of the testator. The wife, Artie Todd, and the appellant, David P. Todd, brother of the testator, were appointed executors and were

not required to give any bond for the performance of their duties as such. With the exception of the provisions for the wife and the creation of the trust, the estate was given to the heir of the testator in the same way that it would have passed by descent if there had been no will. The bequest and devise to the widow were absolute and not subject to the trust, and the evident purpose of making the will was to create the trust for the child. The testator was about fifty-two years old when he was married and about sixty when the will was made. He had said that he would not live to see his child grow up, and had expressed a feeling that he did not want her to come into the estate before she would acquire sufficient discretion to manage it, and had spoken of the difficulty of her visiting and managing farms and real estate. He lived a little more than three years after the will was made, and died on December 10, 1904, leaving said Artie Todd his widow, and Leah Todd, then about six years old, his only child and heir-at-law. The will was admitted to probate by the circuit court of Coles county. L. D. Ray, as next friend of Leah Todd, filed the bill of complaint in this case to set aside the will upon the ground that the testator, at the time of executing it, was not of sound mind and memory. The widow, Artie Todd, filed an answer, which she afterward withdrew, and appellant filed his answer denying the averment of the bill that the testator was not of sound mind and memory. The cause was tried by a jury, and there was a verdict finding that the will was not the will of the testator, and a decree was entered setting it aside. From that decree this appeal was taken. The widow has since died, and left the appellee, Leah Todd, her only heir.

It was proved at the trial that Asahel J. Todd, the testator, had been a competent business man and was the vice-president and one of the directors of a bank, and continued to be such vice-president and director up to the time of his death. Counsel for appellee concede that until shortly before the will was made he had been a vigorous, hard-headed busi-

ness man, of strong mental powers and considerable education; that he had been an active officer of the bank and had accumulated by his own efforts a fortune of $60,000. For some weeks prior to the execution of the will he had suffered from what his doctor said was a rheumatic paralysis, causing very great pain and interfering to some extent with the use of one leg, so that he dragged the foot in walking. About a week before the will was executed he dictated its provisions and it was drawn in accordance with his directions. Before the will was signed it was read over to him and he was asked if it was his will, and he answered that it was, and it was executed with the formalities required by the law. About three o'clock the next morning he suffered a stroke of paralysis, which disabled one side and his vocal organs. He never regained his power of speech and could not express his thoughts except by assenting to or dissenting from questions or statements made to him. He was able to walk around but did not regain full use of his right side, although he retained his official connection with the bank and continued to transact business.

A number of witnesses for the complainant testified that in their opinion the testator was unable to transact business intelligently after the stroke of paralysis, and other witnesses testified for the defendant that his mind was not affected by the paralysis but only his power of speech, and that he was perfectly competent to transact business up to about the time of his death. The subject of inquiry was the mental condition of the testator at the time of the execution of the will, and not afterward. Where a mental condition is once shown to exist, if it is of a continuous nature it will be presumed to continue, but there is no presumption that a mental condition connected with a new and impaired physical state existed previously, without proof of the fact. There was no dispute of the fact that the testator suffered a stroke of paralysis after the execution of the will which was not of the same character as the previous rheumatic paralysis causing the

lameness and pain. It is only legitimate to show the condition of the testator after a will has been executed when the evidence will tend to show his condition at that time, and in this case the subsequent condition appears to have arisen from a new cause which was not in operation when the will was executed.

As to the mental condition and capacity of the testator before the execution of the will, which is presumed to have continued up to that time, the evidence in the record appears to preponderate in favor of testamentary capacity, although there is some evidence to the contrary. The evidence as to the condition of the testator when the will was signed consisted of the testimony of his nephew, who wrote the will, and his doctor, both of whom testified that he was competent to transact business, and of the two attesting witnesses, one of whom was a brother-in-law of the widow, who refused to testify that he was of sound mind and memory. He was suffering intense pain at the time, and after he signed the will he hobbled over to a couch and laid down, and groaned and made other manifestations of great suffering. The brother-in-law testified that he could not say whether the testator was competent to transact business, and that witness came to that conclusion after he laid down, because he gathered his arms around him and groaned and sighed as though he were going to die. The other witness said he supposed the testator knew something, but that he was not just at himself at the time. On cross-examination he admitted that he believed the testator knew about his property and what he wanted to do. The credibility of these subscribing witnesses is affected, to some extent, by the fact that they took part in the execution of the will by witnessing it. They signed a regular formal attestation clause, and if they were of ordinary intelligence they knew that their act was equivalent to certifying to the mental condition of the testator. If they had died, proof of their signature, with or without a regular attestation clause, would have had that effect in the law.

But even giving full weight to everything they said on the trial it would not prove a want of testamentary capacity. If the testator's mind and memory were sufficiently sound to enable him to intelligently understand the business he was engaged in when he executed the will, he had the testamentary capacity required by the law. In the case of *Yoe* v. *McCord,* 74 Ill. 33, the court commended the following definition from 1 Redfield on Wills, 123, as to the legal meaning of sound mind and memory: "The result of the best considered cases upon the subject seems to put the quantum of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction, or, in popular phrase, that the testator should, at the time of executing the will, know and understand what he was about." It was said that such an expression of the doctrine is intelligible to a jury and embodies about the whole rule upon the subject, so far as it can profitably be given to a jury. We are still of that opinion, and think that a simple definition of that kind carries as much information to a jury as the numerous amplifications of the subject in which the courts have indulged. Applying that rule to the evidence, it seems to us that the preponderance was in favor of testamentary capacity, and that the jury must have based their verdict upon the evidence as to the subsequent condition of the testator which was not proved to have existed when the will was made. Furthermore, the internal evidence furnished by the will itself indicated capacity, forethought and prudence on the part of the testator for the best interests of his infant child. At any rate, the evidence was of such a character as to call for careful and correct instructions as to the law.

Upon the argument of the case to the jury the counsel for complainant stated that all parties interested in the estate wanted the will set aside; that no one having any interest in the property desired it to stand; that the suit was between the widow and child on the one side and David Todd on the other, who was fighting to get his commissions as executor

and to control the estate for twenty years without bond. This appeal to the jury was not objected to but it was in the highest degree improper, and if it had been objected to, the court would have been bound to sustain the objection and put a stop to argument of that character. The widow had no personal interest whatever in the litigation, as she could renounce the will at her own election and take what she would get if it were set aside. The child, on account of her immaturity, was incapable, in the law, of forming any judgment. The law would not allow a child of her age to manage her own property, and the attempt to set aside the will was by a next friend. The law did not authorize the court or jury to carry out the wish of the widow or the child, but required that the will should be sustained as the will of the testator if he was competent to execute it. The testator commingled the duties of executors and trustees, but the law is ample for the protection of the trust estate, which appears to have been largely in real estate, which the trustee could not dispose of at his own election, and the evidence was that the trustee is responsible and has considerable estate. The executor appears to have been discharging his duty in the defense of the suit and in endeavoring to sustain a will. His efforts appear to have been as much in the interest of the child as the efforts of the next friend, who was not seeking to increase her estate by setting aside the will, but only to have it turned over to her at eighteen years of age. There was nothing in the evidence to justify the attack upon the executor, and he did not, by failing to object to the argument, forfeit his right to have its effect counteracted, so far as possible, by an instruction. For that purpose the court was asked to give an instruction that it was the duty of the executor to defend the will when there was a bill filed to set it aside, but the court refused to give the instruction. In view of the argument the refusal was error.

The sixth and seventh instructions given at the request of the complainant were as follows:

6. "The court instructs the jury that if they believe, from the evidence, that upon the question whether the said Asahel J. Todd understood the nature and effect of the said supposed will at the time the same was executed that the evidence is equally balanced, then and in that case you should find that it is not his will.

7. "You are instructed that the burden of proof is upon the proponents,—that is, upon the defendant, David P. Todd, in this case,—to show that the will offered by them was signed by the said Asahel John Todd, and that at the time of signing the said will the said Asahel John Todd was of sound and disposing mind."

These instructions ignored and conflicted with two well settled presumptions of the law. There was no averment in the bill that testator did not know the nature of the will nor what was in it. There is always a presumption that one who signs an instrument understands its nature and contents, and the general rule is, that proof of the testator's signature to the will is *prima facie* evidence of his having understandingly executed the same. (*Yoe* v. *McCord, supra.*) In *Sheer* v. *Sheer,* 159 Ill. 591, it was said: "Where a will is shown to have been prepared at the request of a testator, even under general directions, and is afterwards executed in the manner provided by law, it should not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact." Another general presumption is, that all persons are of sound mind until the contrary is proved. It is true that under our statute the validity of a will cannot rest on that presumption alone, but proof must be made of testamentary capacity. Under the issue formed on a bill to contest a will, the burden is on the party asserting the validity of the will to make such proof, and if it is not made the will must be set aside; but if it is made, the law adds the presumption of sound mind which applies to all men, and the evidence of want of testamentary capacity must be sufficient to neutralize both the testimony of testa-

221—27

mentary capacity and the presumption of the law. The law gives, and the instructions should give, to the proponent of a will the benefit of the presumption of soundness of mind. (*Carpenter* v. *Calvert*, 83 Ill. 62.) The instructions in this case did not give to the defendant the benefit of the legal presumptions, and the sixth directed the jury to find that the will was not the will of the testator if the evidence before them upon the question whether he understood its nature and effect was equally balanced. The court erred in giving the instructions.

The decree is reversed and the cause remanded.

*Reversed and remanded.*