## SQUIER et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 15.

Circuit Court of Appeals, Second Circuit.

Dec. 11, 1933.

Henry M. Wise and Woolsey A. Shepard, both of New York City (Woolsey A. Shepard, of New York City, of counsel), for appellants.

Pat Malloy, Asst. Atty. Gen., and John H. McEvers and Walter L. Barlow, Sp. Assts. to Atty. Gen., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question is whether certain deductions in connection with a purchase of 985 shares of stock of the Shur-Loc Elevator Safety Company, Inc., at an aggregate cost of $40,500, loans to that company amounting to $52,950, and certain loans to the Shur-Loc Company of Illinois, aggregating $98,000, should be allowed as a deduction in computing the net income of Edwin M. Squier accruing during the period from January 1, 1926, to the date of his death on November 9, in that year.

During the years 1914 to 1919, Squier had purchased the 985 shares of stock of the Shur-Loc Elevator Safety Company, Inc., a New York corporation, at a cost of $40,500. The operations of the company consisted in the construction and installation of certain elevator safety devices, and it was constantly unsuccessful throughout the entire period of its activity. During the years 1917 to 1926, inclusive, Squier advanced the total sum of $356,100, receiving in return the company's demand notes bearing interest at 6 per cent. Between January and November 5, 1926, he advanced $52,950; the last item of this amount being advanced on November 5, only four days before his death. He was a director of the company, and was active in its management.

In the year 1915, the Shur-Loc Company of Illinois was incorporated to act as sales agent in an effort to market the New York company's products. Squier, though the owner of but one share of stock of the Illinois company, was a director and made considerable advances to it. It had frequent need of money and no source of financial aid other than Squier. Between August 25, 1921, and November 3, 1926, he made periodical advances to the Illinois company in the aggregate sum of $98,000. Both companies ceased to operate as soon as the death of Squier terminated his financial support. His executors came into the possession of:

985 shares of capital stock of Shur-Loc Elevator Safety Company, Inc., which had cost the decedent.. $40,500.

1 share of stock of Shur-Loc Company of Illinois.

Notes of the Shur-Loc Elevator Safety Company, Inc., covering advances by the decedent amounting to ........................$356,100.

Notes of the Shur-Loc Company of Illinois covering advances of..... $98,000.

Decedent's sole occupation was the management of his investments and acting as director in certain banks and manufacturing corporations. He employed no clerk or assistant. He kept no books or records of accounts other than the entries of deposits and withdrawals in his check books and a memorandum book showing his advances to both companies and the notes received therefor. He was in good health and attended to his affairs at his office until November 5, 1926. On November 6, 1926, he was taken ill with pneumonia and died November 9, 1926.

The stock of the Shur-Loc Elevator Safety Company, Inc., was valued for transfer tax purposes at $1, and the share of Shur-Loc Company of Illinois stock at the same figure. The notes of both corporations were appraised as of no value.

On December 31, 1926, the executors wrote off as of November 8, 1926, in the memorandum book kept by the decedent, the total of all the advances made by him to both companies. They filed an income tax return on behalf of the decedent for the period from January 1, 1926, to November 9, 1926, and deducted for bad debts $52,950, the amount advanced by the decedent to Shur-Loc Elevator Safety Company, Inc., in the year 1926, and $98,000, the aggregate amount of the advances to the Shur-Loc Company of Illinois from August 5, 1921, to November 9, 1926. They also deducted the sum of $40,500, the amount invested by the decedent in the stock of the Shur-Loc Elevator Safety Company, Inc.

The Commissioner assessed a deficiency tax for the period from January 1, 1926, to November 9, 1926, on the ground that none of the foregoing deductions could properly be made. The executors appealed to the Board of Tax Appeals, which found that the probable actual realizable value of the assets of the Shur-Loc Elevator Safety Company, Inc., as of November 30, 1926, was $19,436.33, and the liabilities were $384,820.62, with an apparent deficiency of capital amounting to $365,384.29; also that the Illinois Company had an operating deficiency on September 30, 1925, of $135,584.39, that there was an apparent deficiency of capital of $78,584.39, and that its financial condition had not improved between that date and November 30, 1926. It further found that the decedent took an active part in the affairs of both companies up to the time of his death and that both companies ceased to operate when the death of the decedent terminated his financial support. The Board said in its opinion that the executors asserted that, if the decedent had attempted to establish a fiscal period ending prior to his death and to take the deductions on the return for such period, he would have failed because the worthlessness could not have been demonstrated. This, however, is denied by the executors in their brief submitted on this appeal, and it at most could have amounted to no more than a statement by the counsel for the executors of what they thought to be the fact. The Board of Tax Appeals held that the worthlessness did not occur until after the decedent's death, and hence that any deductions could not be attributed to the period before his death. Accordingly, the Board entered an order affirming the deficiency found by the Commissioner.

The provisions of the Revenue Act of 1926, chapter 27, 44 Stat. 26, § 214 (a) (4, 5, 7), 26 USCA § 955 (a) (4, 5, 7), which govern the present situation, are as follows:

Sec. 214. "(a) In computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year. * * * *"

Subdivision 5 seems to cover the losses which are claimed by reason of the worthlessness of the stock.

Article 144 of Regulations 45 of the Treasury Department relating to income taxes (which was in effect prior to 1926) provides that, if stock of a corporation becomes worthless, its cost "may be deducted by the owner in the taxable year in which the stock was ascertained to be worthless and charged off, provided a satisfactory showing of its worthlessness be made as in the case of bad debts."

Perhaps under article 144 of Regulations 45 it might have been contended that a taxpayer who wished to deduct the loss upon stock that had become worthless must "ascertain" its worthlessness and "charge off" its cost as is required by section 214 (a) (7) of the act, 26 USCA § 955 (a) (7), in case of a worthless debt.

But the form of the regulation for the Revenue Act of 1926 differed. Article 144 of Regulations 69 (applicable to the act of 1926) provided that:

"If stock of a corporation becomes worthless, its cost or other basis determined under section 204 may be deducted by the owner in the taxable year in which the stock became worthless, provided a satisfactory showing of its worthlessness be made, as in the case of bad debts."

Even before the change in the regulations, there had been a ruling by the Bureau of Internal Revenue in answer to an inquiry by a taxpayer as to the right of an administrator to deduct losses upon stock held by a taxpayer who died in August, 1921. The ruling was that:

"If the decedent did not deduct the amount of the loss on account of the worthless stock from his 1920 gross income in determining his net income for that year, such a loss is an allowable deduction from the gross income of the decedent for the period January 1, 1921, to the date of his death, the appraisal determining the worthlessness of the stock as of the latter date. The amount of the loss will be the amount of the cost of the stock or its fair market value on March 1, 1913, whichever is lower." I. T. 1381 C. B. I-2, p. 113.

Neither the statute nor the regulation required the decedent to "ascertain" the worthlessness of the stock during his lifetime in order that its cost might be deducted from his income. It only had to become actually worthless during the taxable period in which the loss was claimed. If it became worthless between January 1, 1926, and November 9, 1926, his executors might take the deduction.

 We are satisfied that the stock of such a hopelessly insolvent corporation as Shur-Loc Elevator Safety Company, Inc., was worthless during the taxable period. But so far as we can see it was worthless some years before. The record shows an operating loss from the organization of the Shur-Loc Elevator Safety Company, Inc., in 1914, up to November 30, 1926, when it ceased to do business. Prior to January 1, 1926, the loss had already aggregated $322,765.82. The burden was upon the executors to establish that the stock, the cost of which they seek to deduct, became worthless during the taxable year. But it seems quite evident that it was equally worthless the year before and doubtless for several years prior to that. In such circumstances, it cannot be said that the loss was sustained during the taxable year in which it is sought to be deducted. Accordingly the deduction for the loss upon the stock cannot be allowed. De Loss v. Commissioner (C. C. A.) 28 F.(2d)

803; Volker v. United States (D. C.) 40 F. (2d) 697.

The debts were never "ascertained" by the testator to be worthless. He made advances only four or five days before his death, which showed that he still believed that the corporations had some vitality and thought that he could salvage something from them. Upon no other theory can his continuance to advance money be explained. Inasmuch as he kept no books of account, we may ignore his failure to charge off the debts [Shiman v. Commissioner (C. C. A.) 60 F.(2d) 65, at page 66], but we cannot say that he "ascertained" them to be worthless when almost the last acts of his life were to make advances to promote the continuance of their business. The right to claim a deduction is a statutory privilege, and the statute was not complied with. American Cigar Co. v. Commissioner (C. C. A.) 66 F.(2d) 425; Ludlow Valve Mfg. Co. v. Durey (C. C. A.) 62 F.(2d) 508.

It may be argued that if the decedent, at the moment of his death, had been aware of his immediate demise and of the condition of his companies, he would have ascertained the debts to be worthless and would have declared them such. But the validity of this argument depends upon an assumption that at the moment of death he knew that he was dying and that he would make no further advances to keep the companies afloat. Such an assumption we think unwarranted.

In our opinion neither the losses upon the stock nor the bad debts are such deductions as may be taken by the executors.

The order is affirmed.