## DUNBAR v. COMMISSIONER OF IN-TERNAL REVENUE.
### No. 7520.

Circuit Court of Appeals, Seventh Circuit.

April 21, 1941.

David O. Dunbar, of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel and Lee A. Jackson, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Petitioner appeals from an order of the Board of Tax Appeals, sustaining a finding of the Commissioner of Internal Revenue that petitioner had not established his right to a deduction from his income for the year 1935, claimed on account of an alleged loss of $6,615 by reason of the alleged worthlessness of certain shares of the capital stock of the California and Oregon Lumber Company.

The facts are not in dispute and disclose that in 1924 the taxpayer purchased for the sum of $6,615, 528 shares of such stock which he continued to hold at all pertinent times. The lumber company owned large tracts of timber land in the states of California and Oregon and later began the manufacture and sale of lumber both at wholesale and retail. Some of its operations were for a time profitable, but were later curtailed on account of the lack of a market. The company, however, continued to hold its timber properties. In 1930, in order to prevent default on its outstanding bonds, and in order to pay current taxes and carrying charges, the company was forced to borrow additional money. To secure the payment of same it executed and delivered to certain trustees two trust deeds, covering substantially all of its property. Default having later been made in the terms of this mortgage and foreclosure being threatened, the stockholders called a special meeting in December, 1935, to discuss the situation. The outcome of this meeting was that the stockholders authorized the officers of the company to make absolute conveyance of all the mortgaged property to the trustees in lieu of a foreclosure proceeding. It also appeared that at this time there were delinquent taxes upon the property of more than $70,000.

The State of Delaware, to which the company owed its corporate existence, declared its charter void as of July 1, 1935, for failure to pay franchise taxes and to reinstate itself within two years subsequent to default.

Income tax returns were filed by the company for the years 1925 to 1931, inclusive, none of which showed any taxable income, but all of which showed the ownership of very substantial properties, offset, however, to a large extent by the liabilities of the company. The comparative balance sheet attached to the last return, 1931, is appended in a footnote.[1]

The commissioner concedes that the stock in question was worthless in the taxable year of 1935, but claims that the evidence fails to show that it became worthless in 1935. He asserted in a communication to the taxpayer, explaining the disallowance of the loss, that evidence on file in his office indicated that the stock was valueless prior to December 31, 1934. The case, therefore, turns, not upon the question of whether the stock is worthless, but whether petitioner has proven that it did not become worthless prior to 1935. The burden was upon the taxpayer to show not only that the stock was worthless but that it became worthless in the year 1935. Squier v. Commissioner, 2 Cir., 68 F.2d 25; Cass v. Helvering, 8 Cir., 83 F.2d 841; DeLoss v. Commissioner, 2 Cir., 28 F.2d

[1] SCHEDULE A.

CALIFORNIA & OREGON LUMBER COMPANY
Comparative Balance Sheet.

| Assets | December 31, 1930 | December 31, 1931 |
|---|---|---|
| Cash | $ 1,620.43 | $ 10,136.44 |
| Accounts Receivable | 23,978.68 | 25,144.97 |
| Notes Receivable.... | 4,675.32 | 2,000.00 |
| Inventory-Logs ..... | 118,240.22 | 118,240.22 |
| Deferred Charges... | 131.94 | |
| Timber ............. | 1,978,791.87 | 1,978,791.87 |
| Lands: Timber...... | 66,610.61 | 66,610.61 |
| Farm ...... | 78,768.82 | 40,036.73 |
| Plant and Equipment | 149,000.00 | 149,000.00 |
| | $2,421,817.89 | $2,389,960.84 |
| Liabilities | | |
| Accounts Payable.... | $ 176,641.90 | $ 207,369.87 |
| Notes Payable....... | 805,725.26 | 805,392.26 |
| Accrued Interest Payable .......... | 535,791.88 | 623,862.11 |
| Bonds .............. | 663,000.00 | 663,000.00 |
| Capital Stock........ | \*\*\*\*\*\*\*\*\* | \*\*\*\*\*\*\*\*\* |
| Surplus ............. | \*\*\*\*\*\*\*\*\* | \*\*\*\*\*\*\*\*\* |
| | \*\*\*\*\*\*\*\*\* | \*\*\*\*\*\*\*\*\* |

803; Sacks v. Commissioner, 4 Cir., 66 F. 2d 308. If it in fact became worthless prior to December 31, 1934, then obviously it did not become worthless in 1935 and the taxpayer has not sustained the burden cast upon him. As a part of his burden in demonstrating that it became worthless in 1935 he must of necessity show that it had some intrinsic or potential value at the close of 1934. Concededly the question is one of fact, not to be disturbed by this court on review if supported by substantial evidence. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343. Worthlessness being a fact question and difficult of establishment, the determination of each case must rest upon its own peculiar facts. Morton v. Commissioner, 7 Cir., 112 F.2d 320 and other cases there cited. In the instant case no dispute exists as to any proven fact, but only in the inferences and legal conclusions to be drawn therefrom.

■ The Revenue Act of 1934, § 23(e), 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 23(e), provides that:—"In computing net income there shall be allowed as deductions: * * * In the case of an individual, losses sustained during the taxable year * * *." Treasury Regulation 86, promulgated under such act, provides that: "If stock of a corporation becomes worthless, its cost, or other basis as determined and adjusted under Section 113, is deductible by the owner for the taxable year in which the stock became worthless, provided satisfactory showing is made of its worthlessness. * * *" The taxing act is to be construed most strongly against the government. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

The comparative balance sheet appended to the income tax return of the company for the year 1931 speaks vividly of the condition of the company as of December 31, 1931. We are told by this unchallenged evidence that the company at the beginning of 1932 still owned assets in excess of liabilities (other than capital stock) of $90,-336.60. Included in the then owned assets were logs of the value of $118,240.22, timber of the value of $1,978,791.87, timber and farm lands of the value of $106,647.34, plants and equipment of the value of $149,-000. True, these assets were then under mortgage to secure a part of the indebtedness of the company and remained so encumbered until the company reached a

climax in its financial affairs in December, 1935, when it was deemed necessary to transfer the assets to the creditors in satisfaction of their claims. But was it unreasonable for petitioner to assume during the intervening period—1932, 1933, 1934—that there remained in the company something either of an intrinsic or potential value for the stockholders? A company that possessed so many thousand acres of timber land and other assets, as it is shown the company possessed during this period, even though the company was fast becoming engulfed in its obligations, must reasonably be said to hold something of value for its owners.

■ The taxpayer here made no effort to claim a loss until 1935, when the company's charter was revoked and it divested itself of all its assets. It then became known definitely, and we think for the first time, that the stockholders were to suffer a complete loss. The worthlessness of the taxpayer's stock then became a fact susceptible of proof by the identifiable events referred to. The statute contemplates the deduction from gross income of losses which are fixed by identifiable events, such as the sale of property, etc. United States v. White Dental Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Rosing v. Corwin, 2 Cir., 88 F.2d 415; Dresser v. United States, Ct.Cl., 55 F.2d 499; Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262. The act does not contemplate, and the regulations specifically forbid, a reduction by the taxpayer for an amount claimed as loss merely on account of shrinkage or fluctuation in value of capital stock. United States v. White Dental Company, supra. The income tax law is concerned only with realized losses as it is with realized gains. Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720. In dealing with a loss occasioned by the taxpayer's breach of contract, the Supreme Court said, " * * * no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010.

■ The fact that the company had some $90,000 more of assets than liabilities in 1932 and the fact that it possessed substantially the same assets in 1935, regard-

370

less of the fact that its obligations were substantial, point forcefully to the conclusion that its capital stock could not be deemed worthless prior to the final liquidation in 1935. "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference within logical limits, that it exists at a subsequent time." 22 C.J. Sec. 28. It has been held that a condition of insolvency shown to exist at a particular time will be presumed to continue in the absence of a showing to the contrary. Wachsmuth v. Penn Mut. Life Ins. Co., 147 Ill.App. 510; Cleage v. Laidley, 8 Cir., 149 F. 346. A mental condition once established is presumed to continue until the contrary is shown. Todd v. Todd, 221 Ill. 410, 77 N.E. 680; Kuehne v. Malach, 286 Ill. 120, 121 N.E. 391.

The evidence shows that in 1935, prior to the conveyance of its assets, the company was possessed of extensive natural resources. It owned more than 40,000 acres of timber lands, lumber and planning mills, saw mills, houses, buildings, kilns, log ponds, dams, riparian rights, harbor improvements, storage yards, railways, tramways, logging roads, rights of way, cars, engines, machinery and other apparatus. This was immediately following years of severe depression and while the company found itself heavily in debt, there may well have been a reasonable expectation that normal conditions would return and that the potential value evidenced by the ownership of such vast properties would soon develop into actual intrinsic worth. Who is there to define as unreasonable that man who under such circumstances concludes that something of value still remains in his capital stock?

As the Supreme Court said in United States v. White Dental Company, supra, that the taxing act does not require the taxpayer to be an "incorrigible optimist," neither does it require him to be an incorrigible pessimist. That the taxpayer, during the crucial period of 1932 to 1935, adopted an optimistic rather than a pessimistic view of the future of the California and Oregon Lumber Company is not, under the circumstances here present, to be condemned.

 We feel that the taxpayer in the instant proceeding not only used good judgment in his appraisement of the situation and in his withholding of a claimed loss until 1935, when total loss became apparent beyond controversy, but has acted in the utmost good faith. No one challenges his asserted loss or that it is complete, but only that he has not claimed it in apt time. He should not be penalized by any technical application of hard and fast rules in the assumption of the burden cast upon him to establish the precise time in which the loss occurred. It is a difficult burden at the best and, in the consideration of whether it has been met, he is entitled to that common sense, practical test suggested by the Supreme Court in Lucas v. American Code Co., supra. A careful study of the undisputed documentary evidence in the record, with all legitimate inferences and presumptions to be deduced therefrom, convinces us that the legal conclusions drawn by the commissioner and sustained by the board are without support. The decision of the board is reversed.