### HALL et al. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 7804.

Circuit Court of Appeals, Seventh Circuit.

May 22, 1942.

E. H. McDermott, Wm. M. Emery, and Richard S. Oldberg, all of Chicago, Ill., for petitioner.

J. P. Wenchel and Vernon F. Weekly, both of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, F. E. Youngman, and A. A. Armstrong, Sp. Asst. Attys. Gen., for respondent.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

In 1935 Eric E. Hall, one of the petitioners herein, was the owner of 495 shares of the preferred and 4,500 shares of the common stock of the Chicago Stadium Corporation. The stock had cost him $41,252.-50, which sum he deducted from the Federal joint income tax return of himself and his wife, as a loss incurred in 1935 because the stock was worthless. The Commissioner of Internal Revenue disallowed the deduction, and determined a deficiency against the taxpayer. The Board of Tax Appeals sustained the Commissioner, hence this appeal.

The issue presented to the Board of Tax Appeals was whether the stock was worthless prior to 1935, and the burden was upon the taxpayer to satisfy the Board that the stock was not worthless prior to 1935. Dunbar v. Commissioner, 7 Cir., 119 F.2d 367, 135 A.L.R. 1424; Squier v. Commissioner, 2 Cir., 68 F.2d 25.

The sole asset of the Chicago Stadium Corporation was the stadium building and equipment completed in West Chicago in 1929. The building was designed and used for conventions, sporting events, circuses, etc. The land, building and equipment cost over four million dollars. There were outstanding $1,700,000 first mortgage bonds, $183,100 second mortgage bonds, $2,500,000 preferred stock, which had been sold at $85 per share, and the common stock, which had been given as a bonus with the sales of the preferred.

The corporation was in default in its interest payments January 1, 1932. Receivers were appointed January 20, 1933, and foreclosure proceedings were instituted the same day. In February, 1933, the receivers notified the transfer agent not to make any more transfers of stock. March 2, 1933, the first report of the receivers showed an operating deficit of $687,697.16 from the date of organization to January 31, 1933. November 3, 1933, the second report of the receivers showed the preferred and common stock had an equity of $75,672, and on a revaluation of assets, the book values were reduced from $6,771,969 to $2,571,501. During the year 1933, the corporation operated at a loss of $150,916.

June 25, 1934, a petition for reorganization was filed. On October 22, 1934, in that proceeding, a report on claims showed first mortgage bondholders' claims $1,679,-000; second mortgage bondholders' claims, $210,000; taxes, $150,000; and other claims of $103,279. A plan of reorganization was submitted, under which the stockholders would have received nothing. This plan was rejected by the court because it thought the plan was not fair and equitable to the bondholders. Nothing was said about the stockholders. The property of the corporation on appraisal as of January 1, 1935 was less than $1,750,000. February 25, 1935 a plan of reorganization was approved, under which the stockholders got nothing.

The record of this corporation shows that it was a grandiose scheme, even for the fools' paradise of 1929 which we thought was prosperity. Consequently, the corporation was a failure from the start. No profit was ever made, to say nothing of earnings for dividends. There was evidence in 1934, which, viewed against the background of failure from the start and overcapitalization, warranted the Board in finding that the stock was worthless in 1934.

The Board of Tax Appeals is the trier of the facts, and we sit to review

errors of law only. If there is substantial evidence to support the Board's finding, we must affirm. This is elementary. Helvering v. Rankin, 295 U.S. 123, 131, 55 S. Ct. 732, 79 L.Ed. 1343.

■ The finding by the Board that the stock became worthless before 1935 was a finding of fact. In our opinion, this fact was sustained by substantial evidence, and this question is not open to review before us. Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593; Malden Trust Co. v. Commissioner, 1 Cir., 110 F.2d 751; Purvin v. Commissioner, 7 Cir., 96 F.2d 929, 120 A.L.R. 166; Sacks v. Commissioner, 4 Cir., 66 F.2d 308.

The petitioner has relied heavily on our decision in Dunbar v. Commissioner, 7 Cir., 119 F.2d 367. The facts in that case were not as strong in favor of the Board's action as in the present case. In the Dunbar case, the loss was claimed in 1935 and disallowed by the Commissioner of Internal Revenue; his action was affirmed by the Board of Tax Appeals, just as in the case at bar, but in that case, we reversed the Board. There it appeared that the stock claimed as worthless was in a corporation that owned valuable timber lands in California and Oregon, and operated some saw mills. This corporation had shown a profit, but in 1930 it was unable to meet its bonds and other expenses. It borrowed more money and gave a mortgage on all of its property. Default occurred in this mortgage, presumably in 1935, as the stockholders met in December, 1935, and authorized the transfer of its property in satisfaction of the mortgage, which transfer took place in 1935. The State of Delaware had forfeited the corporation charter on July 1, 1935 for failure to pay its franchise taxes.

The warning signals were not as many in the Dunbar case as in the case at bar, and practically all of them occurred in 1935. The property was of a different kind. A corporation that has a product to market has a business of greater speculative value and prospect for profit and improvement than one has in an income property in an established community, especially where the income property is a failure from the start and plainly overdeveloped and overcapitalized.

Furthermore, as the Board found, the facts in the case at bar were as apparent in 1934 as in 1935. That is not true of the Dunbar case, where the identifiable event or events leading up to the determination were accumulated and made apparent in 1935, the year in which the loss was claimed.

The tax return for 1934 did not have to be filed until March 15, 1935. The final event that closed the history of this worthless stock occurred February 25, 1935, in ample time to have enabled the taxpayer to claim the loss for 1934. The event of February 25, 1935 made conclusive that which was plainly apparent in 1934, as the Board found.

In view of all the accumulation of evidence which indicated the worthlessness of the stock prior to 1935, we cannot say that the Board's finding that the stock was worthless before 1935 was clearly erroneous. On the contrary, we think the evidence supports the Board's finding, and is substantial.

The decision is affirmed.

MAJOR, Circuit Judge (concurring).

I approve the opinion solely because there is substantial support for the Board's finding that the stock became worthless prior to 1935. The result, however, to my mind, is an injustice to the taxpayers, but one we are powerless, under the circumstances, to correct. Assuming petitioners acted honestly and in good faith as to the year when the deduction should have been claimed, and there is nothing to indicate to the contrary, it is now poor consolation to suggest that it should have been claimed in 1934. Had this been done, it is reasonable to believe that the taxpayers would have been met with the contention that the proper year was 1935, or, perhaps 1933. In either event, a finding of the Board sustaining such contention would find support in the evidence. The unfair predicament in which an honest taxpayer is placed is illustrated in Mahler v. Commissioner, 2 Cir., 119 F.2d 869, wherein the Commissioner found that the stock became worthless in 1936, the Board of Tax Appeals found that it became worthless in 1932, and the court, as to a part of the stock, concluded that the finding of the Board was without substantial support and that it became worthless in 1934, as claimed by the taxpayer. As stated, however, the evidence in the instant case is such that the finding of the Board can not be ignored.