## MUNKWITZ et ux. v. UNITED STATES.
### Civil Action No. 550.

District Court, E. D. Wisconsin.

June 29, 1942.

Ralph Von Briesen, **of** Milwaukee, Wis., for plaintiffs.

B. J. Husting, U. S. Dist. Atty., of Milwaukee, Wis., for defendant.

SCHWELLENBACH, District Judge.

This is an action to recover money paid by the plaintiffs on a deficiency assessment arising out of their 1935 joint return. The disputed item in that return was their claimed deduction for loss of the value of 350 shares of preferred stock of the Kempsmith Manufacturing Company, in the amount of $21,000. The stock was owned by the plaintiff wife. The action involves the sole question as to whether or not the stock became worthless during the calendar year 1935. The facts are not in dispute.

Kempsmith Manufacturing Company (hereinafter called "the company") was organized under Wisconsin law in 1901. It manufactured precision machine tools and until 1935 was housed in a factory owned by it in the city of West Allis, Wisconsin. On February 17, 1933, pursuant to action of stockholders of the company, the assets of the company were transferred to a trustee under a voluntary deed of trust, for the purpose of liquidating it. Immediately thereafter, manufacturing activities were discontinued, with the exception of assembling some machines out of parts on hand and supplying of repair parts to old customers. These parts came out of inventory, with the exception of a few instances when they were manufactured. On December 8, 1933, proceedings were commenced against the company to foreclose a mortgage against all the land, buildings, machinery, and equipment of the company, which had been pledged as security for a bond issue. On March 5, 1934, judgment in the amount of $231,879.51 was entered. On July 16, 1935, the sheriff's sale under the foreclosure took place. The assets were bid in at $100,-000, leaving a deficiency of $131,879.51. In July, 1933, the trustee offered at public auction all of the machinery and unencumbered assets of the company, which were then appraised at $55,000. He rejected the offer of $4,700 at that time. By the close of the year 1933, all of the unencumbered assets of the company had been disposed of with the exception of certain inventories and miscellaneous equipment which had an appraised value of $40,000. At that time the company owed current notes and accounts payable, exclusive of bond issue, totaling $225,746.98. In December, 1935, the trustee sold the remaining inventory and the good will of the company for $12,000. In 1933 the company had outstanding 6,000 shares of common stock of the par value of $1 each, and 2,984 shares of preferred stock with par value of $100 each. The remaining inventory assets sold in December, 1935, were purchased by one Cattnig, who organized the Kempsmith Machine Company. He testified that there were 11,000 Kempsmith machines in the United States, and that he, using this as a basis for a new business, built it up to a gross of $100,000 in 1937, that he did a $1,600,000 business in 1941, and that he estimates the 1942 gross will be $2,000,-000. He further testified that if he had more space in which to turn out more work, he could get more business. It is plaintiffs' contention that the stock which the plaintiff wife owned did not actually become worthless until 1935. This despite the fact that the plaintiff husband, who had endorsed some $21,000 in notes for the corporation, paid off the notes, wrote the transaction off his books, and claimed and was allowed the amount as a bad debt deduction during the year 1933. The defendant admits the plaintiff wife sustained the loss,

but contends the loss was sustained during the year 1933, and was not an allowable deduction for the year 1935.

The Revenue Act of 1934, Sec. 23(e), 48 Stat. 680, 26 U.S.C.A. Internal Revenue Code, § 23(e), provides: "In computing net income there shall be allowed as deductions: * * * In the case of an individual, losses sustained during the taxable year * * *."

Treasury Regulation No. 86, promulgated under such act, provides that: "If the stock of a corporation becomes worthless its cost or other basis as determined and adjusted under Section 113 is deductible by the owner for the taxable year in which the stock becomes worthless provided satisfactory showing is made of its worthlessness * * *."

■ The burden is upon the taxpayer to show not only that the stock was worthless, but that it became worthless in the year 1935. Squier v. Commissioner, 2 Cir., 68 F.2d 25; Cass v. Helvering, 8 Cir., 83 F. 2d 841; Sacks v. Commissioner, 4 Cir., 66 F. 2d 308. As a part of the plaintiffs' burden of demonstrating that it became worthless in 1935, they must of necessity show that it had some intrinsic or potential value at the close of 1934. Dunbar v. Commissioner, 7 Cir., 119 F.2d 367, 135 A.L.R. 1424. Worthlessness being a fact question and difficult of establishment, the determination of each case must rest upon its own peculiar facts. Morton v. Commissioner, 7 Cir., 112 F.2d 320. The statute contemplates the deduction from gross income of losses which are fixed by identifiable events. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Lewellyn v. Electric Reduction Co., 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262. The requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. The fact that the assets were insufficient to meet the current liabilities may properly be taken as evidence of worth of the stock, but it is not conclusive. Olds & Whipple, Inc., v. Commissioner, 2 Cir., 75 F.2d 272. Nor is the cessation of business in itself conclusive. Jones v. Commissioner, 9 Cir., 103 F.2d 681. Where, because of an identifiable event such as bankruptcy, voluntary liquidation, actual cessation in the conduct of the business, or the like, all reasonable hope and expectation of even a partial return of capital is gone, the taxpayer will not be permitted to delay taking the deduction. Gowen v. Commissioner, 6 Cir., 65 F. 2d 923.

■ The task in this case is to determine whether the plaintiffs sustained the burden of proving that prior to the close of 1934 no identifiable events in the affairs of this corporation had occurred which individually or collectively could be said to have destroyed any reasonable hope and expectation of a return on the plaintiffs' capital investment. I am convinced they have not sustained that burden. The following identifiable events destroyed all reasonable hope for the salvaging of anything from this stock: (1) The transfer of the assets to a trustee on February 17, 1933, for the purpose of liquidation; (2) the practical discontinuance of manufacturing by the company at that time; (3) the entry on March 5, 1934, of the mortgage foreclosure judgment in an amount more than twice in excess of the amount which the property brought at the later sale; (4) the transpiring of events which by December 31, 1933, had culminated in a situation in which the company had unencumbered assets of only $40,000 with which to pay off accrued obligations of $225,746.98. Making use of the language of the present Chief Justice in United States v. S. S. White Dental Manufacturing Co., supra, anyone conversant with the foregoing combination of identifiable events would have to be an "incorrigible optimist" to believe that the plaintiffs' preferred stock had the slightest value at the close of the year 1934.

■ Plaintiffs attempted to show value by proving that the purchaser of the jigs and dies and remaining inventory, who took them over in 1935, has made a success of the business to the point that it will gross $2,000,000 this year. That is no proof of the value of the stock of the company in 1933 and 1934. The fact that the new company under new management and without the weight of debt hanging over its head, succeeded has no relationship to the value of the stock of the old company. Certainly it cannot be said that the present war industry business can be used as a criterion in judging the value of the stock eight or nine years ago. There are many things valuable today that were worthless then. One need point no further than to the frantic search now being conducted through the junk yards and garages of the country for

abandoned automobile tires to demonstrate this fact.

The action of the plaintiffs must be dismissed.