James J. Colt v. Commissioner.
Colt v. Commissioner
Docket No. 1059.
United States Tax Court
1944 Tax Ct. Memo LEXIS 209; 3 T.C.M. (CCH) 546; T.C.M. (RIA) 44201; June 8, 1944
*209 Frank T. Kleiger, Esq., 217 Broadway, New York, N. Y., for the petitioner. J. Richard Riggles, Jr., Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves income taxes for the calendar year 1941. The Commissioner determined a deficiency in the amount of $1,184.28. The only issue presented is whether the 30,000 Commonwealth and Southern Corporation Option Warrants, of which the petitioner was the owner during the entire taxable year, became worthless during the taxable year 1941. From evidence adduced, we make the following Findings of Fact Petitioner is an individual residing in Newark, New Jersey. He filed his income tax return for the year 1941 with the collector of internal revenue for the second district, New York. Petitioner was the owner of 30,000 Commonwealth and Southern Corporation Option Warrants (hereinafter sometimes referred to as "warrants") during the entire taxable year, 1941. There were outstanding, during 1941, 17,588,156-373/1200 such warrants, each of which carried the privilege of being converted into no par common stock of Commonwealth and Southern Corporation, without time limit. The following table *210 shows the price range of these warrants together with the volume of annual sales, and the bid and asked prices on the last day of each of the year set forth below: Last Day
Year
Open
High
Low
Last
Volume
Bid
Asked
1939
1/8
3/16
1/16
1/16
367,900
1/16
1/8
1940
3/32
5/32
1/64
1/32
608,200
1/32
1/16
1941
1/64
1/16
1/256
1/256
479,700
None
1/256
1942
1/64
1/32
1/256
1/64
202,300
1/64
1/32
There were 60,000,000 shares of no par common stock of Commonwealth and Southern Corporation authorized. Of these, 33,673,328-71/1200 were outstanding and 17,588,956-373/1200 were reserved for warrants. The common stock during 1939 sold at a high of 2-1/8 and at a low of 1-1/8. The following tables show the price range based upon actual sales of the common stock by months for the years 1940 and 1941: 1940
Month
High
Low
January
1-3/8
1-1/8
February
1-1/4
1-1/8
March
1-3/8
1
April
1-1/2
1-1/8
May
1-1/4
3/4
June
1-3/4 *
13/16
July
1-5/8
1-1/4
August
1-3/8
1-1/4
September
1-3/8
1-1/8
October
1-1/2
1-1/8
November
1-5/8
7/8
December
7/8
5/8 **
1941
January
13/16 *
5/8
February
3/4
5/8
March
3/4
3/8
April
1/2
3/8
May
7/16
5/16
June
7/16
5/16
July
9/16
3/8
August
7/16
3/8
September
7/16
3/8
October
3/8
1/4
November
5/16
1/4
December
1/4
1/8 **
*211 Commonwealth and Southern Corporation paid a stock dividend on its common stock of 1 1/4 per cent on September 3, and December 2, 1929. A quarterly dividend of fifteen cents per share was paid from March 1, 1930, to March 2, 1931, inclusive. A dividend of ten cents per share was paid on June 1, and September 1, 1931, and on March 1, 1932, a dividend of 15 cents per share was paid. No further dividends were paid after March 1, 1932, (at least through 1942). A few days before the close of the taxable year, 1941, petitioner advised Louis Reich, a member of Reich and Company, a New York firm of brokers having membership on the New York Curb Exchange, that he had 30,000 warrants which he would sell if a bid could be obtained. No specific instructions to sell at a stated price were given by petitioner to Louis Reich. The latter was unable to locate a bid and advised petitioner by a letter dated December 31, 1941, that "Commonwealth & Southern Corporation option warrants has been quoted all day and closed offered at 1/256 [1/256 of a dollar] and no bid showing, therefore, we could not dispose of any of your stock." Petitioner also requested, *212 during December, 1941, Finch, Wilson & Co., a New York firm of brokers having membership on the New York Stock Exchange, to explore the possibilities of selling the 30,000 warrants and that firm advised petitioner by letter dated December 31, 1941, that they had been "unable to find any market whatsoever for the * * * warrants which you requested us to sell and therefore have been unable to sell them." Petitioner, despite the form of the letter he received from Finch, Wilson & Co., never placed an order for the 30,000 warrants with that firm. Petitioner, in determining the warrants to be worthless, relied on the fact that they were offered at 1/256 per share, that there was no bid during the last few days of 1941, and that he was unable to dispose of the warrants. Petitioner still owns these warrants. Commonwealth and Southern warrants were traded in after December 1941. Federal stamp taxes on the sale, transfer, or agreement to sell these warrants amounted to $5 per 100 warrants on December 31, 1940, and during 1941. *
*213 The warrants did not become worthless during the taxable year, 1941. Opinion Petitioner contends that he is entitled to a deduction from his gross income for 1941 of $3,947.55, being one-half of the loss allegedly sustained by him in 1941 as a result of the 30,000 warrants of which he was the owner during 1941, having become worthless in that year. The pertinent sections of the Internal Revenue Code are set forth in the margin. [1]
The burden of the proof is on the petitioner to prove that the warrants became worthless in 1941. A corollary is that they must have had worth at the beginning of that year. "It would appear, as pointed out *214 by the Court in Dunbar v. Commissioner, 7th Cir., 119 Fed. (2d) 367, 369, 135 A.L.R. 1424, that 'As a part of his burden in demonstrating that it became worthless [in the year of the claimed deduction] he must of necessity show that it had some intrinsic or potential value at the close of [the preceding year].'" San Joaquin Brick Co. v. Commissioner, (C.C.A., 9th Cir.), 130 Fed. (2d) 220. If these 30,000 warrants were sold on December 31, 1940, petitioner would have received the sum of $937.50 for them. He would have had to pay a tax upon such sales pursuant to the provisions of section 1802 (b) of the Internal Revenue Code, as amended by sections 1 and 402 of the Revenue Act of 1939, and by section 210 of the Revenue Act of 1940, of five cents per warrant, or $1,500 for the 30,000 warrants. These warrants, therefore, were worthless at the end of 1942, [2] unless the right of the owner thereof to convert them into common stock at the price of $30 per share, was of value at the close of 1940. We fail to find in the record *215 proof that the right of convertibility was of value as of December 31, 1940. The fact that the common stock sold at a high of only 7/8 in December, 1940, plus the fact that no dividends had been paid on the common stock since March 1, 1932, indicate to the contrary. Petitioner himself testified that the stock quotations in 1940 of the common stock did not justify a judgment that there was more value in 1940 than in 1941. He further testified that one of the factors upon which he based his judgment that there was a greater possibility of realizing a profit on common stock in years prior to 1941 than in 1941 was the court litigation pending in 1941 in connection with Commonwealth and Southern Corporation; but, on cross-examination, he admitted that the litigation had begun in 1937 and that he was unfamiliar with the nature of it. Another factor which he intimated was of a similarly depressing nature in 1941 was that it was not possible to realize any value from the common stock "with the S.E.C. attempting to put them out of business." We do not believe that this Court is justified in predicating a conclusion that the convertibility of the warrants was of some value as of December 31, *216 1940, upon such evidence. The record is otherwise devoid of evidence tending to show that these warrants were valuable on December 31, 1940, because they were convertible into common stock under certain conditions. We, therefore, hold that the petitioner has not shown these warrants to have become worthless during 1941, even though they may have been worthless in December 1941. Decision will be entered for the respondent. Footnotes
*. High for the year. ↩
**. Low for the year.↩
*. Sec. 1802 (b), Internal Revenue Code↩, as amended by secs. 1 and 402 of the Revenue Act of 1939, and by section 210 of the Revenue Act of 1940.
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * * * *
(2) If incurred in any transaction entered into for profit, though not connected with the trade or business: * * * (g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.↩
2. See, Young v. Commissioner, ↩ 123 Fed. (2d) 597.