BOWLES, Price Administrator, v. SENDEROWITZ et al.

Civil Action No. 3835.

District Court, E. D. Pennsylvania.

April 10, 1946.

Atwood Cranston and Harold Craske, both of Washington, D. C., and Junius P. Abramson, of New York City, for plaintiff.

Julius M. Rapoport, of Allentown, Pa., and William J. Mahon, Albert I. Schmalholz, and J. William Rosenbluth, all of New York City, for defendants.

BARD, District Judge.

This action was brought by the Administrator of the Office of Price Administration, pursuant to Section 205(e) of the Emergency Price Control Act of 1942[1] to restrain defendants from selling certain merchandise until required records are prepared and maintained, to enjoin sales at over ceiling prices, and to recover treble damages for the sale, between July 1943 and April 1944, of men's and boys' shorts at prices allegedly in excess of the maximum prices determined under the Regulations.

In the complaint plaintiff alleges sales in excess of maximum prices determined by the price regulations in a sum in excess of $100,000 and asks that judgment be entered in favor of the plaintiff and against the defendants for a sum in excess of $300,000. At trial plaintiff proved certain sales of garments at prices which he claims were overcharges in the sum of $49,611.39, and for which plaintiff claims treble damages of $148,834.17.

[1] Act of January 30, 1942, c. 26, Title II, § 205(e), 56 Stat. 34, as amended June 30, 1944, c. 325, Title I, § 108(b), 58 Stat. 640, 50 U.S.C.A.Appendix § 925(e).

At the conclusion of plaintiff's evidence, defendants moved for dismissal of the action or for judgment in their favor and rested. The matter will be decided on this motion.

Between March 1943 and April 1944 defendants sold quantities of men's and boys' shorts including, ·inter alia, style numbers 467, 259 and 259(b). Sale of these styles was discontinued in April 1944. Until May 1943 the determination of the maximum price for this merchandise was controlled by General Maximum Price Regulation § 1499.3(b), 7 F.R. 3154.[2] This section required defendants, after obtaining specific authorization from the Office of Price Administration, to calculate the proper maximum price according to a prescribed formula, and to report the calculated price within ten days subject to adjustment by the Administrator. On May 24, 1943 this section was amended,[3] eliminating the necessity of prior authorization before calculating the maximum price under this section.

In June 1944 plaintiff began an investigation of defendants' records. The complaint was filed July 14, 1944, although the investigation continued for some time thereafter. Until this time defendants had not reported the self-determined maximum prices to the Administrator, despite the provisions of Section 1499.3(b) of the Regulations. On August 1, 1944, two weeks after the filing of the complaint and about three months after sale of the garments had ended, defendants filed their reports, as required by the Regulations, for styles 259 and 467.

On June 1, 1944, by Amendment 61,[4] subsection (e) (1) was added to Section 1499.3 of the Regulations providing that "the Price Administrator, * * *, may at any time approve, disapprove or revise maximum prices reported, proposed or established under paragraphs (a), (b) (1), or (c) of this section *so as to bring them into line with the level of maximum prices otherwise established by this regulation.*" (Italics supplied) Prior to this amendment the "in-line" price was to be determined by the seller only, except that Section 1499.3(b) made the submitted price subject to adjustment by the Administrator. Under the authorization of Section 1499.3(e) (1), the Administrator promulgated an order on October 20, 1944, three months after the complaint was filed, in which he stated that the determination of maximum prices by defendants, submitted August 1, 1944, was not in line with the level of maximum prices and ordered that defendants' maximum selling prices for styles 467 and 259 *"shall be established* as follows * * *"* (Italics supplied) The prices set forth were lower than the prices submitted by defendants and were lower than the prices at which the garments had been sold. On May 8, 1945, ten months after suit was begun, the Administrator amended this order making the adjusted maximum prices effective retroactively to cover the period between the date the garments were first offered for sale and the date when defendants' prices were filed with the Administrator. It is this maximum price established by the retroactive order, promulgated May 8, 1945, ten months after the filing of the complaint, upon which plaintiff bases his contention that defendants sold garments between July 1943 and April 1944 at prices higher than allowed by law.

---

[2] (b) Sales other than at wholesale or retail. In the case of a sale other than at wholesale or retail, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration. A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the Office of Price Administration in Washington, D. C., an application setting forth (1) a description in detail of the commodity for which a maximum price is sought; and (2) a statement of the facts which differentiate such commodity from other commodities delivered during March 1942 by such seller and by other competitive sellers of the same class. If such authorization is given, it will be accompanied by instructions as to the method for determining the maximum price. Within ten days after such price has been determined, the seller shall report the price to the Office of Price Administration in Washington, D. C., upon a form, duly filled out and signed under oath or affirmation, which will be furnished him. The price so reported shall be subject to adjustment at any time by the Office of Price Administration.

[3] Amendment 54, 8 F.R. 6962. The statement of considerations published in conjunction with the amendment (Document No. 16109) indicates that the manufacturer was now permitted automatically to determine his own maximum price.

[4] 9 F.R. 5169.

Defendants urge in support of the motion to dismiss (1) that the Administrator has no authority to issue the retroactive order of May 8, 1945; (2) that the Administrator's power to make an "in-line" adjustment of maximum prices stemmed from the amendment of June 1, 1944, which added subsection 3(e) (1) to Section 1499.3 of the Regulations and that even if the retroactive "in-line" adjustment was valid it could not affect sales prior to June 1, 1944; and (3) that plaintiff's evidence proves that plaintiff did not have a cause of action on the date the complaint was filed because the order establishing the adjusted ceiling price, which is the basis of plaintiff's cause of action, was not promulgated until approximately ten months after the complaint was filed.

The Administrator argues that the amendment of June 1, 1944, adding Section 1499.3(e) (1) was merely a clarification of the Administrator's power to adjust prices "in-line" with other established prices which he previously had under Section 1499.3(b); that this Court has no power to determine the validity of the retroactive order under the provisions of Section 204(d) of the Act, 50 U.S.C.A.Appendix § 924(d), but this issue must be decided by application to the Emergency Court of Appeals; and that the Administrator had a cause of action at the inception of the suit and that the only effect of the retroactive price order was to make the amount of damages, which had existed inchoately, ascertainable.

The dispositive issue on defendants' motion is whether or not plaintiff had a legal cause of action at the time the complaint was filed. If defendants' contentions on this issue are sound, then the question whether the Administrator's retroactive price order is valid need not be determined, for reasons which will be later indicated.

The complaint, filed on July 14, 1944, alleges that defendants sold garments "at prices in excess of the maximum prices established therefor pursuant to the provisions of the General Maximum Price Regulations." During the period when the sales were made and until the filing of the complaint, the only maximum prices which may have been in existence for styles 259, 259(b) and 467 were the prices computed by the defendants in accordance with the procedure found in Section 1499.3(b). Even these computations were not proper maximum price determinations since these prices were not reported to the Administra-

tor as required by the Regulations. Nor was any maximum price fixed by the Administrator up to the date of the filing of the complaint. It was not until three months after the complaint was filed that the Administrator fixed a valid adjusted "in-line" maximum price in an order operating in futuro. And it was not until ten months after the filing of the complaint that the Administrator issued an order making the prior pricing order retroactive to the period in which the sales were made.

Plaintiff's right to recover in this action must be predicated upon facts in existence at the time the complaint was filed. United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893; American Bonding & Trust Co. v. Gibson County, 6 Cir., 145 F. 871, 7 Ann.Cas. 522; County Court of Marion County, West Virginia, v. United States, 53 Ct.Cl. 120. Since the rights of the parties must be determined on facts existing at the inception of the suit, American Agricultural Chemical Co. v. Moore, D.C., 17 F.2d 196, the court cannot adjudicate, in this action, rights which accrued, or which are based on facts which occurred subsequent to the commencement of the action. Kontovich v. United States, 6 Cir., 99 F.2d 661. The non-existence of a cause of action when suit is commenced is fatal, and the defect cannot be cured by the happening of events thereafter which create or mature a good cause of action. American Bonding & Trust Co. v. Gibson County, supra; County Court of Marion County, West Virginia, v. United States, supra. Where the action has thus been prematurely brought, the suit should be dismissed. City of Trinidad v. Hokasona, 8 Cir., 178 F. 438.

Although Rule 15(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, permits a party to set forth transactions or events which happened after the filing of the complaint, the supplemental pleading is merely a continuation of the complaint justifying other or further relief. City of Texarkana v. Arkansas Louisiana Gas Co., 306 U.S. 188, 59 S.Ct. 448, 83 L.Ed. 598; Howard v. Jennings, 8 Cir., 141 F.2d 193. However, if plaintiff did not have a cause of action at the time the complaint was filed, he could not, by a supplemental pleading, allege a cause of action thereafter accruing because of subsequent happenings or events. Bersenbrugge v. Luce Mfg. Co., D.C.W.D.Mo.,

30 F.Supp. 101. The Federal Rules of Civil Procedure, therefore, have not effected any change with regard to the requirement that facts constituting a cause of action must exist at the time suit is commenced. Mellor v. Smither, 5 Cir., 114 F. 116; Kryptok Co. v. Haussmann & Co., D.C.E.D.Pa., 216 F. 267; Eveland v. Detroit Machine Tool Co., D.C.E.D.Mich., 18 F.2d 968.

Plaintiff's own evidence shows that one essential fact necessary to its cause of action did not exist at the commencement of the action. On that date the maximum price for styles 467, 259 and 259(b), upon the basis of which plaintiff claims an overcharge, was not in existence. On that date plaintiff would have been unable to prove a cause of action. Several months thereafter, plaintiff, by his own act, perfected a cause of action by promulgating a retroactive price order. Since the evidence shows that plaintiff could not sustain a good cause of action on the facts as they existed when suit was commenced, his action is defective, and since this fact cannot be cured by a supplemental amendment (assuming such an amendment would be allowed at this time) that portion of the suit which is based on the Administrator's price order fixing maximum prices for styles 467, 259, 259(b) [5] must be dismissed. Mike Levine, Inc. v. Baer, D.C.S.D.N.Y., 32 F.Supp. 575; Berssenbrugge v. Luce Mfg. Co., supra.

The conclusion must be the same whether or not the Administrator's orders of October 20, 1944 and May 8, 1945 have a valid retroactive effect extending over the period when these sales were made. The orders were not promulgated until *after* the date the complaint was filed. On that date no price orders had been issued and no maximum prices had been established so that the Administrator could have no valid cause of action on the facts existing when the action was begun. The problem of the retroactive effectiveness of the Administrator's orders would have been determinative only if they had been promulgated *before* the complaint was filed. If the orders had been promulgated before suit was begun, all the essential elements upon which the cause of action was based would have existed prior to the filing of the complaint. Thus, the only argument which could have been advanced by de-

fendants in support of the motion to dismiss would have been the invalidity or ineffectiveness of the retroactive pricing order. This would be a matter for the Emergency Court of Appeals to determine. However, under the evidence before me, it is unnecesary to await the determination of this issue, in view of the fact that no cause of action based on the Administrator's prior order fixing maximum prices for styles 467, 259 and 259(b) existed when the complaint was filed.

Plaintiff contends that the cause of action was complete on the date the overceiling sales were made and not when the Administrator promulgated the adjusted maximum prices. This argument assumes the very question which is the essence of the cause of action, i.e., whether or not overceiling sales were made. Ordinarily maximum prices are in effect before a sale is made. In such a case, when a sale is made at a price higher than the established maximum price, a cause of action arises immediately in favor of the Administrator or the purchaser, as the case may be. However, when a sale is made before the maximum price has been established under the appropriate Regulation, the Administrator may have a potential cause of action, but, if so, this potential cause of action cannot become the basis of a suit until the appropriate maximum price is determined. If, as in this suit, the maximum price is not determined until after the complaint is filed, then the suit has been started before all the essentials of the Administrator's cause of action are in existence.

The Administrator cites Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488, and General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, as authority for his argument that the failure of the Administrator to promulgate the maximum prices before the filing of the complaint did not mean that the Administrator had no cause of action, but rather that the action could proceed even if the administrative order was not promulgated until even after the trial had commenced. I do not think that these cases sustain plaintiff's position.

In the General American Tank Car case, plaintiff brought an action based on a con-

---

[5] Defendants contend that the Administrator's price fixing order did not establish a maximum price for style 259(b). For the purpose of this opinion, I have assumed that the order fixed a maximum price for this style. In either event, the action must be dismissed as to the alleged overcharges on the sales of this style.

tract for the lease of certain tank cars. Defendant refused to pay certain amounts due under the contract on the ground that such payments were rebates, illegal under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. The Supreme Court held that the federal court had jurisdiction over this simple contract action, but that the Interstate Commerce Commission was the proper body to determine the validity of the payments, and that the action should not be dismissed but should be held pending the conclusion of appropriate administrative proceedings to establish the validity of the payments.

The Addison v. Holly Hill case was an action brought by employees against their employer for wage payments under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The Supreme Court remanded the case to the trial court with directions to retain jurisdiction until the Administrator made a definition within the authority granted him by the Congress, which definition was essential to a proper determination of the case. In both cases the plaintiffs had good causes of action before suit was begun. The administrative actions requested by the court were not essential elements of the causes of action but they were necessary merely to aid the court to determine the suits properly. Since the authority to make these rulings had been delegated to the administrative body by the Congress, the court stayed determination of the suits until the Administrators exercised their authority, enabling the court to adjudicate the actions.

In the present case, no cause of action existed until the Administrator exercised his authority. By exercising his authority after the complaint was filed, the Administrator created a cause of action which did not exist when suit was begun.

■ Plaintiff contends that it is inequitable for defendants to argue that, since the Administrator's order was promulgated after the complaint was filed, plaintiff did not have a cause of action when suit was brought, in view of the fact that the tardiness of the pricing order was due to defendants' failure to submit the required price computations until after suit was commenced. Plaintiff's argument ignores the fact that the Administrator had the right at all times, under Section 205(a) of the Act, 50 U.S.C.A.Appendix § 925(a), to obtain an order from the court compelling defendants to submit the informa-

tion necessary to enable the Administrator to fix an adjusted maximum price. Granting that defendants were at fault in not submitting the information required by the Regulations, the Administrator was equally at fault in not exercising the powers granted to him to enable him to combat the very situation presented in this case.

Upon review of the evidence presented by plaintiff, it does not appear that plaintiff had a good cause of action as to the alleged overceiling sales of styles 467, 259 and 259(b) on the date suit was brought. That part of the complaint asserting a cause of action for overceiling sales of these styles, therefore, must be dismissed.

■ Plaintiff proved certain sales of styles 1810, 1850, 461, 469 and 459(b) at prices in excess of the maximum prices with an aggregate overcharge of $419.05. The maximum prices for these styles were established from the base period prices charged in March 1942 for the same styles. Defendant concedes that these over ceiling sales were made but argues that the Administrator did not prove that the purchases were made in the course of trade or business, i.e., sales to wholesalers and retailers, and that under Section 205(e) of the Act the Administrator can not bring suit unless this is established. Although there is no direct proof of this fact, the evidence is sufficient to raise the inference that all of the sales were made to wholesalers and retailers and not to consumers. Plaintiff is entitled to recover for these violations. In view of the tremendous volume of defendants' sales, it might appear that these overceiling sales were inadvertent and not wilful violations of the Act. However, defendants have persistently ignored the obligations imposed upon them by the Emergency Price Control Act, thereby making the proper administration of the Act exceedingly difficult. Defendants have not proved that these violations were neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation. I therefore assess treble damages in the amount of $1,257.15.

■ In addition to the recovery of damages for overceiling sales, the Administrator seeks an injunction requiring defendants to maintain the records required by the Regulations, to submit such information to the Administrator as is required by the Act, and to refrain from directly

or indirectly selling or offering to sell their garments at prices in excess of the maximum prices determined pursuant to the Regulations. The evidence presented shows the defendants have not complied with these provisions of the Act and the Regulations. Plaintiff is entitled to the injunction requested.

### Findings of Fact.

1. Defendants Morris H. Senderowitz, Morris Senderowitz and Abraham M. Senderowitz are co-partners doing business under the name of Royal Manufacturing Company and maintain a place of business at 645 North Jordan Street, Allentown, Pennsylvania. Defendants are engaged in the business of manufacturing and selling men's and boys' shorts.

2. In March 1943 defendants commenced manufacturing and selling new types of men's and boys' shorts designated as style numbers 259, 259(b) and 467. These styles were not previously manufactured and sold by defendants. Their manufacture and sale were discontinued in April 1944.

3. Between July 15, 1943, and July 14, 1944, defendants sold and delivered 3,579½ dozen men's shorts style number 467 at $2.90 per dozen, 1,948 dozen of the same style at $3.00 per dozen, and 3,417 dozen of the same style at $3.15 per dozen; 750 dozen men's shorts style number 259 at $2.37½ per dozen, and 29,240½ dozen of the same style at $2.50 per dozen; 6,478½ dozen boys' shorts style number 259(b) at $2.37½ per dozen, and 950 dozen of the same style at $2.50 per dozen.

4. The determination of the maximum selling price for styles 467, 259, and 259(b) was controlled by General Maximum Price Regulation § 1499.3(b), 7 F.R. 3154, effective May 11, 1942, which, as amended, has been in effect at all times since that date. Section 1499.3(b) of the Regulations provided the exclusive method of establishing maximum prices for the new styles of men's and boys' shorts known as style numbers 467, 259, 259(b).

5. As originally promulgated, Section 1499.3(b) of the Regulations required defendants to calculate the maximum price for styles 467, 259 and 259(b), after obtaining specific authorization from the Office of Price Administration, according to a prescribed formula, and to report the price within ten days subject to adjustment by the Administrator.

6. On May 24, 1943, the Administrator amended Section 1499.3(b) by Amendment 54, 8 F.R. 6962. The amendment eliminated the requirement that defendants obtain authorization from the Administrator before calculating the maximum price for these new garments. Defendants were still required to report the maximum price within ten days from the date of determination by them and this submitted maximum price was subject to approval, disapproval or adjustment by the Administrator.

7. On May 13, 1944, the Administrator promulgated Amendment 61, 9 F.R. 5169, effective on June 1, 1944. This amendment, inter alia, added subsection (e) (1) to Section 1499.3 of the Regulations. This subsection provided that the Administrator "may at any time approve, disapprove or revise maximum prices reported, proposed or established under paragraphs (a), (b) (1), or (c) of this section so as to bring them into line with the level of maximum prices otherwise established by this regulation."

8. During June 1944, approximately two months after manufacture and sales of styles 467, 259, 259(b) had ended, the Administrator began an investigation of defendants' business operations which continued for a period of several months.

9. On July 14, 1944, before completing this investigation, the Administrator filed a complaint averring, in a general manner, that defendant had made sales at prices in excess of the maximum prices established by the applicable price regulation.

10. As of July 14, 1944, defendants had not reported the self-determined maximum prices for styles 467, 259 and 259(b) to the Administrator. This was a violation of the provisions of Section 1499.3(b) of the Regulations which required defendants to submit their computed maximum prices to the Administrator for approval within ten days after their determination.

11. On August 1, 1944, two weeks after the filing of the complaint and about three months after defendants stopped selling the garments, defendants filed their self-determined maximum prices for styles 467 and 259 with the Administrator as provided in the Regulations.

12. On October 20, 1944, three months after the complaint was filed, the Administrator issued Order No. 112 under the authorization of Section 1499.3(e) (1), ad-

justing the maximum selling price for styles 467 and 259. The order stated that defendants' determination of maximum prices, submitted August 1, 1944, was not in line with the level of maximum prices, and that defendants' maximum selling price for sales to wholesalers and retailers "shall be established" at $1.60 per dozen for style number 467, and $1.50 per dozen for style number 259. These prices were lower than those submitted by defendants on August 1, 1944 and were below the prices at which these styles were sold between July 1943 and July 1944.

13. On May 8, 1945, about ten months after the suit was begun, the Administrator filed an amendment to Order No. 112 (Paragraph 12) purporting to make the adjusted maximum price for styles 467 and 259 effective retroactively to cover the sales prior to August 1, 1944.

14. Between July 15, 1943, and July 14, 1944, defendants sold 849½ dozen shorts style number 1810 at $3.25 per dozen; 1,857 dozen shorts style number 1850 at $3.25 per dozen; 24 dozen shorts style number 461 at $3.37½ per dozen; 100 dozen shorts style number 459(b) at $2.62½ per dozen; and 100 dozen shorts style number 469 at $3.60 per dozen.

15. Under the provisions of Section 1499.2(a) of the Regulations the maximum selling prices for the styles enumerated in 14 above were the highest prices at which defendants sold and delivered these styles in March 1942. As determined in this manner, the maximum selling prices for these garments between July 1943 and July 1944 were: $3.10 per dozen for style 1810; $3.10 per dozen for style 1850; $3.25 per dozen for style 461; $3.50 per dozen for style 469; and $2.50 per dozen for style 459(b).

16. Within one year prior to the date of the complaint defendants made a total of thirteen sales of styles 1810, 1850, 461, 469 and 459(b) for a total overcharge in excess of the applicable maximum prices for these styles in the amount of $419.05.

17. All of defendants' sales and deliveries of men's and boys' shorts styles 259, 259(b), 467, 1810, 1850, 461, 469 and 459(b) during the period between July 15, 1943 and July 14, 1944 were made to purchasers for their use in the course of trade or business. These sales were made to wholesalers or retailers and not to the ultimate consumer.

18. Those sales by defendants which were at prices in excess of the maximum prices were either wilful or the result of defendants' failure to take practical precautions against the occurrence of such violations. Defendants' conduct was in complete disregard of the requirements of the General Maximum Price Regulations and the duties imposed upon them by law.

### Conclusions of Law.

1. Defendants violated Section 1499.3(b)(1) of the General Maximum Price Regulations in that they failed to report to the Office of Price Administration their determination of maximum prices for men's and boys' shorts style numbers 259, 259(b) and 467 within the time permitted by the Regulations.

2. Defendants violated the provisions of Section 4(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 904(a), and Section 1499.1 of the General Maximum Price Regulations by making thirteen sales of men's and boys' shorts, styles 1810, 1850, 461, 469 and 459(b) at a total overcharge of $419.05.

3. Judgment should be entered in favor of plaintiff on behalf of the United States of America for treble the amount of these overcharges, or a total amount of $1,257.15.

4. An injunction should issue (1) enjoining defendants, their servants, agents and employees and all persons in active concert or participation with any of them from selling, or agreeing to sell, men's or boys' shorts at prices in excess of maximum prices established under the provisions of the Emergency Price Control Act of 1942, and (2) directing the defendants to keep and maintain the records required by the Regulations promulgated thereunder.