**LACY et ux. v. UNITED STATES.**

No. 49-C-1495.

United States District Court,
N. D. Illinois, E. D.

July 24, 1952.

Marvin Wallach, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Atty., and John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for defendant.

PERRY, District Judge.

The sole issue of fact and law presented by the pleadings and evidence is whether 500 shares of Class A stock in Van Schaack Bros. Chemical Works, Inc., purchased by plaintiff, Kenneth B. Lacy, for $10,000 in 1926, became worthless during 1944. If the stock did become worthless, then under the provisions of Section 23(e)(2) and (g)(2), Internal Revenue Code, 26 U.S.C.A. § 23(e)(2), (g)(2), plaintiffs are entitled to a deduction of $1,000 for that year and for each succeeding year through 1948, as a capital loss carry-over permitted by Section 117 Internal Revenue Code, 26 U.S.C.A. § 117(e). If not, judgment should be for the defendant.

The Government contends that a series of events had occurred prior to 1944, when the last asset consisting of improved industrial realty was sold, which established the worthlessness of the plaintiff's stock. These alleged identifiable events may be summarized as follows:

602

1. The audit of September 30, 1935, filed by the debtor corporation, disclosing that the corporation had not paid taxes for the preceding four years, that it has operated at a loss of $89,646.43 for the preceding nine months, and that working capital had decreased from $51,608.05 from April 30, 1935, when the petition for reorganization was filed under 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 to $23,348.53 on September 30, 1935.

2. The stipulation by the debtor corporation of June 7, 1937, that (a) no feasible plan of reorganization of the debtor could be proposed or accepted, (b) that the estate and assets of the debtor should be liquidated, and (c) that it should be adjudicated bankrupt.

3. The cessation of business operations in 1937.

4. The Court order of June 16, 1937, confirming the finding of the Special Master that the aggregate value of the corporation assets was less than the total amount of its liabilities, and that the corporation was unable to submit a fair and feasible plan of reorganization, and further adjudicating the corporation bankrupt.

5. The Court order of June 16, 1937, appointing a trustee to take possession of the bankrupt's property for purposes of liquidation.

6. The sworn statement of the bankrupt's treasurer of July 23, 1937, listing liabilities at that time as $360,000 and the only substantial assets as real estate, plants and equipment of the bankrupt in Chicago, Illinois, and Heath, Ohio.

7. The appraisal by three appointees of the Court in the bankruptcy proceeding, filed April 18, 1938, reporting the Chicago property at a fair market value of only $204,706 and the appraisal of May 23, 1938, reporting the property in Heath, Ohio, at a market value of $5,100.

8. The sale of the Heath property of the bankrupt on September 23, 1938 for $1,725.

9. The order of April 18, 1938, authorizing private sale of the Chicago property because no bids had been received by the trustee at public sale.

10. The trustee's report of October 30, 1939, showing his inability to obtain a purchaser for the Chicago property at private sale and the expiration of the contract of the brokers who were employed to obtain a purchaser.

11. The sale of July 22, 1940, of three parcels of the Chicago land with six buildings, together with furniture and machinery, for $7,500, subject to $30,000 of tax liens, leaving but 316,000 square feet.

12. The petition of the trustee of October 20, 1941, to pay the costs of unsuccessfully advertising the remaining 316,000 feet of property at 35¢ per square foot, which, if sold at the offered price, would have netted only $110,600.

Both parties concede that the plaintiff's stock was worthless by the end of 1944. The issue presented is whether the stock had become worthless before 1944 or whether it continued to have some value until the time the last corporate asset was sold during 1944, as maintained by the plaintiff.

Worthlessness of stock is a question of fact, subject to a practical and not a legal test. Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78. Worthlessness of stock being a fact question and difficult of establishment, the determination of each case must rest upon its own peculiar facts. Morton v. Commissioner, 7 Cir., 112 F.2d 320; Dunbar v. Commissioner, 7 Cir., 119 F.2d 367, 135 A.L.R. 1424. Plaintiff must establish that the stock had some potential or intrinsic value in 1944 before the sale of the last corporate asset. Dunbar v. Commissioner, supra. The act does not contemplate, and the regulations specifically forbid, a reduction by the taxpayer for an amount claimed as loss merely on account of shrinkage or fluctuation in value of capital stock. The income tax law is concerned only with realized losses as it is with realized gains. Dunbar v. Commissioner, supra. Neither the existence of a balance sheet of the corporation showing no equity for the stockholders, nor the appointment of a trustee in reorganization proceedings, nor the adoption of a resolution by the board of

directors of a corporation providing for the liquidation is decisive upon the question of the worthlessness of stock where the evidence also establishes the existence of potential value which may be realized on liquidation or through continuation of business. Nelson v. United States, 8 Cir., 131 F.2d 301.

Whether or not the stock had any potential value after the adjudication of bankruptcy depends upon the valuation which is placed upon the corporate realty in Heath, Ohio, and Chicago, Illinois. The land in both instances was improved with industrial buildings, which were unique in that they were designed for specialized chemical production. The improvement was particularly true in the case of the Chicago property, composed of approximately eight acres, which was sold in 1944. The plaintiff, Kenneth Lacy, who, as an employee of the bankrupt, supervised these construction projects, evaluates the property at a figure between a half million and a million dollars. His evaluation was based upon replacement. He naturally contends that, in view of this evaluation, the identifiable event as to the worthlessness of the stock, did not occur until the sale of the premises in 1944 for $15,000. The Government, however, points to the evaluation of $204,706.00 submitted by the three appraisers, who had been appointed by the Court. It also emphasizes the low appraisal of the Heath property and the subsequent sale at a low figure in 1938 as well as the inability to secure a purchaser for the Chicago premises. It is the Government's position that the identifiable event occurred long before 1944.

It is the Court's view that the unique nature of the Chicago premises was such as warrants saying that the stock could not be definitely considered worthless until they were finally disposed of in 1944. The premises were designed for a specialized type of chemical production, which was becoming increasingly more important as we approached the war period. With the noncombatant restrictions upon construction, there always remained the possibility that some chemical works, which was embarking upon war production, could avail itself of the particularized uses of these premises, and could pay accordingly. This possibility existed until the actual sale in 1944. Until it was exhausted, it could not be said with any degree of certainty that the stock was totally worthless.

This observation does not originate with the Court. It is advanced by the Trustee, who guided the affairs of the bankrupt from 1936 to 1944. He had before him not only the appraisals but also the entire enterprise. In an affidavit presented in support of a motion for summary judgment he makes the following statement:

"Affiant says that he took charge of all the assets, books and records, and in 1937 said concern became a general bankrupt; that among its most substantial assets was title to certain real estate then under consideration for purchase and condemnation for the widening of Avondale Avenue; that at one time there were indications that the City of Chicago was interested in acquiring a part of this property for its streets and alleys department or for park purposes; that with the advent of World War No. 2, in 1942, it appeared that all chemical works would be highly important for war effort and that this concern might be able to work out a satisfactory conclusion of its financial difficulties; that both the aforesaid possibilities for financial reorganization and returns to the stockholders became futile and worthless, and in a letter under date of November 16, 1944, notice went out to all bondholders and creditors to that effect, recommending that the equity in the real estate be sold for Fifteen Thousand ($15,000.) Dollars; that this was in view of the large amount of back taxes, costs, interest and penalties that had accrued in excess of One Hundred Twenty-Six Thousand Six Hundred Seventy-Six Dollars and Ninety-One Cents ($126,676.91); that it also appeared that the concern was not suitable for chemical projects under the War effort.

"That not until some time in the year 1944 did it finally become fixed and certain that the creditors would not be paid out and that the common and preferred stock had become valueless in the opinion of the affiant, based on his close contact with the business and his recommendations and actions therein; that the corporate books and records have since been disposed of and the 8 to 10 acres on Avondale Avenue have been sold and nothing was left for common and preferred stockholders."

In view of the Trustee's long experience with every aspect of this enterprise, the Court attaches great weight to his affidavit. Little weight, if any, can be accorded to the oral testimony of William N. Hart because of the inconsistency between that testimony and his prior affidavit.

Judgment for the plaintiff. An order in accordance with this memorandum will be entered July 24, 1952.