## LACY et ux. v. UNITED STATES.
### No. 10774.

United States Court of Appeals
Seventh Circuit.

Oct. 15, 1953.

H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Sp. Asst. to Atty. Gen., Department of Justice, Washington, D. C., Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Ellis N. Slack, A. F. Prescott, James Q. Riordan, Sp. Assts. to Atty. Gen., Washington, D. C., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellant.

Marvin Wallach, Chicago, Ill., Francis D. Fyanes, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiffs' suit to recover alleged over-payment of income taxes having resulted in judgment in their favor, Lacy v. U. S., D.C., 105 F.Supp. 601, the Government appeals, insisting that the District Court erred in holding that certain shares of Class A stock in Van Schaack Bros. Chemical Works, Inc., purchased by the taxpayers for $10,000 in 1926, became worthless during the year 1944 and not before that time. Whether such a finding was correct was the only issue before the trial court and is the only one submitted to us. Obviously we can not reverse unless the finding is clearly erroneous or unless reversible error occurred in the course of the trial.

Under 26 U.S.C. Sec. 23, a taxpayer may deduct losses sustained "during the taxable year", incurred "in any transaction entered into for profit". If any security representing capital assets becomes worthless during the taxable year, the resulting loss shall be considered as one arising from the sale of assets on the last day of such taxable year. Treasury Regulation 111, promulgated under the Internal Revenue Code, Sec. 29.23 (c)–1 and Sec. 29.23 (e)–4, is largely declaratory of the statute but provides explicitly that, in order to be deductible, the loss must be evidenced by "closed and completed transactions fixed by identifiable events. Substance and not mere form will govern." Determination of worthlessness thus becomes a practical and objective function, rather than a legalistic or subjective one. Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

Fortunately most of the facts here are not greatly in dispute. In 1935, Van Shaack Bros. Chemical Works, Inc., hereinafter referred to as Van Shaack, owned improved industrial real estate in Heath, Ohio, and Chicago, Illinois, designed for specialized chemical production. The corporation had not paid real estate taxes for four years. It had operated at a loss of $89,646.43 for the preceding nine months, and its working capital had decreased from $51,608.05 on April 30, 1935, when it filed a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, to $23,348.53 on September 30, 1935. No feasible plan of reorganization having materialized in the ensuing two years, the debtor was adjudicated bankrupt on June 16, 1937, and a trustee in bankruptcy appointed to take possession of and liquidate the estate. The liabilities on July 23, 1937 were in excess of $360,-000. The only assets were those mentioned in Illinois and Ohio. On April 18, 1938 the fair market value of the Illinois property was not more than $204,706 and that of the Ohio assets not more than $5100. On September 23, 1938 the latter were sold for $1725.

On April 18, 1938 the bankruptcy court, finding that no bids had been received at an advertised public sale, authorized the trustee to make private sale of the Chicago property. On October 30, 1939, the trustee reported that he had not been able to obtain a purchaser. However, three parcels of the Chicago property, including the buildings, furniture and machinery thereon, appraised at $17,500, plus some value for the equipment, were sold July 22, 1940 for $7500, subject to $30,000 in tax liens. This left 316,000 square feet of the Chicago property and this the trustee advertised for sale at 35¢ per square foot. If it had been sold at the price advertised, the sales price would have been $110,600. But no offers were received. All this evidence bearing directly upon the value of the stock up to and including the year 1941 stands without dispute in the record.

It accordingly appears that at the end of 1941 the liabilities were $360,-000; that certain property had been sold for $9225 and that the only remaining assets were what was left of the Chicago property. Consequently, against liabilities of $360,000, there was in sight only $9225 received from property sold

and what could be obtained for the Chicago property, which the trustee had strenuously but vainly endeavored to sell for $110,000. Clearly at that time the undisputed evidence is that all the assets were woefully insufficient to pay the creditors; indeed, that they were worth less than 25% of the amount due creditors; and that there was no possibility of paying the debts in full and not the slightest possibility that the stockholders, preferred or common, could ever realize anything from the assets. In view of these facts, existent at the end of 1941, if not before, the company was hopelessly insolvent, bankrupt, in liquidation of assets wholly insufficient to satisfy the creditors. As there was nothing in sight for the stockholders, the stock was then worthless. Any finding to the contrary is unsupported by the evidence.

 It appears from the District Court's opinion, 105 F.Supp. 601, that it would not have adopted its finding to the contrary except for an affidavit of Fred Hummel, former trustee, to which, the court said, in view of the trustee's long experience with every aspect of the enterprise, it attached "great weight". It may well be that if this affidavit were in evidence, it would adequately support the finding; but it was not properly before the court on the trial. It had been attached to a motion for summary judgment made by plaintiff, which the court had denied, but it was never offered in evidence. Such an affidavit may be received in support of a motion for summary judgment for the very limited purpose of determining whether an issue of fact exists, but it can not be used to decide a contested issue of fact. Farrall v. District of Columbia Amateur Athletic Union, 80 U.S.App.D.C. 396, 153 F.2d 647. Had the affidavit been offered, it would have been subject to valid objection, because its acceptance as evidence would have foreclosed the government from cross-examination of the person making it. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct.

724, 88 L.Ed. 967; United States v. Newbury Mfg. Co., D.C., 1 F.R.D. 718; Nickelson v. Nestles Milk Products Corp., 5 Cir., 107 F.2d 17.

The court, therefore, erroneously relied upon something not in evidence. Inasmuch as the competent evidence discloses only one justifiable finding, namely, that the stock became worthless as early as 1941 and prior to 1944, the judgment must be and is

Reversed.