MINNESOTA MINING AND MANUFAC-
TURING COMPANY, a corporation
of Delaware, Plaintiff,

v.

PLYMOUTH RUBBER COMPANY, Inc.,
a corporation of Massachusetts; Haw-
kins Electric Company, a corporation
of Illinois; Jerome J. Levitt, James J.
Driscoll and Melvin R. Hecker, co-part-
ners d/b/a Complete Electrical Supply
Company, and F. M. Shumway and R.
C. Fresen, co-partners, d/b/a Shumway-
Fresen Co., Defendants.

No. 54 C 1115.

United States District Court
N. D. Illinois, E. D.

March 27, 1959.

**592**

Haight, Lockwood & Simmons, Chicago, Ill., for plaintiff.

Hector M. Holmes, Fish, Richardson & Neave, Boston, Mass., Casper W. Ooms, Dugald S. McDougall, Chicago, Ill., of counsel, for defendant.

ROBSON, District Judge.

This is a patent infringement suit. Defendants have filed a motion for summary judgment on the ground that it has been judicially determined that the precise product here involved did not infringe, and since the only possible infringing change in the product occurred years subsequent to the filing of the instant suit that change could not serve to cure the fatal defect of the complaint of want of infringement prior to suit.

This suit was filed August 4, 1954, on patent No. 2,559,990, issued July 10, 1951, and Reissue No. 23,843, dated June 29, 1954, to one Oace, for an insulating tape. Defendant, Plymouth Rubber Company, Inc., manufactures, and the other defendants distribute or sell the tape.

Plymouth claims protection from suit by virtue of the doctrine of *res judicata,* as announced in Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. The Court of Appeals for the Fourth Circuit in Sears, Roebuck & Co. v. Minnesota Mining and Manufacturing Co., 4 Cir., 1957, 243 F.2d 136 (on rehearing, 4 Cir., 249 F.2d 66), found noninfringement of plaintiff's patent by Plymouth's product. This decision reversed the trial court's findings of validity and infringement. (D.C., 141 F.Supp. 686 (No. 878G)) The Fourth Circuit suit was filed a day before the instant suit. There was a companion case in the District Court of North Carolina, No. 879G, involving the same Plymouth product but against different sellers thereof, which also resulted in a finding of validity of the patent and infringement, but instant defendant Plymouth did not defend the suit, and no appeal was taken from that judgment.

The other instant defendants rely on the decision in Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065, which precludes harassment of customers of a manufacturer whose product has been judicially determined not to infringe where the product is identical. Plaintiff claims that Kessler v. Eldred, supra, is inapplicable because in that case there could be reliance by defendants upon a former judgment prior to acts of infringement and in the instant case the Fourth Circuit suit had not only not proceeded to a judgment upon which Plymouth's customers could rely but had just been instituted the day before this suit. Defendant, however, argues that the Kessler v. Eldred doctrine has been construed to prevent further prosecution of pending litigation (Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir., 1958, 253 F.2d 29). The affidavits of Fresen, Biggam and

Levitt disclose the defendants other than Plymouth sell only tapes manufactured by Plymouth, or plaintiff, or a licensee of plaintiff.

Plaintiff further contends that the motion for summary judgment should be denied because their affidavits disclose that the product has been so changed that the Fourth Circuit decision of noninfringement is no longer *res judicata* as to the manufacturer-defendant on the issue of infringement and Kessler v. Eldred, supra, protective of customer-defendants, is inapplicable since the product is no longer identical with the one subject to the former adjudication. Plaintiff also contends that the subsequent change in the product is sufficient to sustain the instant complaint though there was a want of infringement at the time of the institution of the suit, inasmuch as this is a court of equity which has jurisdiction to grant complete relief and take cognizance of events occurring subsequent to the filing of the original complaint. Plaintiff also points out that the complaint charges a continuing infringement so it validly encompasses any subsequent infringement occurring by reason of change in the product.

The product involved is a pressure-sensitive adhesive tape used in the insulation and protection of electrical conductors, which tape is composed of backing and plasticizer components. The instant patent and controversy revolve around the plasticizer. The Fourth Circuit opinion construes the patent, in essence, to require *two* plasticizers, one liquid and one resinous. In brief, it held Plymouth's product not to infringe because it had but *one* plasticizer, the resinous one, and there could be no infringement of the patent where an essential element of a patent claim was absent in the allegedly infringing product.

The product of Plymouth utilizes the factors of G–25 or G–40 in its plasticizer, which substances are manufactured by the chemical company of Rohm and Haas of Philadelphia. Defendants contend that the G–25 and the G–40 involved in the Fourth Circuit suit, and that involved in the instant suit, are identical. Plaintiff says they are not and cites in support of its contention advertisements of Plymouth which tell of changes in the "power factor," "viscosity," and statements that there never "before was a plastic tape like this"; that it is "superior to any plastic tape ever known"; that it has "wider temperature working range," and that "ZF.90 makes the difference."

Defendants counter that these are "puffing" statements made by its advertising agency without their knowledge and with no factual support and that Plymouth withdrew the advertisements as soon as it saw them.

Defendants also claim that the change in the product was a change of its *name* only, and that it decided in January, 1958, to use its trade-name "Slipknot" on the tape. They further contend that the changes, if any, in G–25 and G–40 were *subsequent* to the institution of this suit and so the fact of change is immaterial and incapable of curing a fatally defective complaint. The change, if any, is limited to G–25, according to defendants, and was as to viscosity and power factor and not as to ingredients. Finally, defendants point out that the opinions of the Court of Appeals for the Fourth Circuit fully passed upon the alleged changes and concluded that such change as may have occurred in G–25 and G–40 did not constitute the product an infringing one because it still utilized but one plasticizer and the patent called for two. As to this, the plaintiff replies that the one plasticizer admittedly used has been so chemically changed that the resinous plasticizer is also the liquid plasticizer so that both plasticizers required by the claims of the patent are present and infringement follows.

Many affidavits, counteraffidavits, and reply affidavits have been filed by the respective parties in support and opposition of the instant motion, as is

permitted by Rule 56, Fed.Rules Civ. Proc. 28 U.S.C.A. These affidavits may be considered "for the very limited purpose of determining whether an issue of fact exists, but cannot be used as a basis to decide a contested issue of fact." Lacy v. United States, 7 Cir., 1953, 207 F.2d 352, 354; Frederick Hart & Co., Inc. v. Recordgraph Corporation, 3 Cir., 1948, 169 F.2d 580; Mitchell v. McCarty, 7 Cir., 1957, 239 F.2d 721; Campana Corp. v. Harrison, 7 Cir., 1943, 135 F. 2d 334; Fishman v. Teter, 7 Cir., 1943, 133 F.2d 222. Similar holdings are Ford v. Luria Steel & Trading Corp., 8 Cir., 1951, 192 F.2d 880; Chappell v. Goltsman, 5 Cir., 1950, 186 F.2d 215; F.A.R. Liquidating Corp. v. Brownell, 3 Cir., 1954, 209 F.2d 375; Vale v. Bonnett, 89 U.S.App.D.C. 116, 191 F.2d 334; see also Cyclopedia of Federal Procedure, sec. 35.21, par. 186.

The following is a brief résumé of the important aspects of the affidavits. The affidavits of Danovitch, Plymouth's chemist, disclose that he has been employed by Plymouth since July, 1924, and personally conducted all research on pressure-sensitive adhesive plastic electric tape and established the formulas of Plymouth's tapes since 1950; that up to 1952, G–40 was the sole plasticizer used, and since Spring of 1954, G–25 has been used as the sole plasticizer. Both G–25 and G–40 are manufactured by Rohm and Haas, a Philadephia Company. He further states that Plymouth has made and sold no tapes except the two tapes using either G–25 or G–40 as the sole plasticizer. His affidavit of July, 1958, states that from "first production and sale of the G–40 tape up to present moment, no change whatever has ever been made in the formula of that tape by way of change of materials, addition of new materials, manufacturing procedures, or otherwise." He makes an identical statement as to G–25. He states further that "with the change of name there was no change whatever in the two plastic electric tapes made commercially by Plymouth—the G–40 and the G–25."

The affidavits of Harris, an employee of Plymouth since 1919, an officer and manager since 1948, state that he had knowledge of the materials, including the plasticizer, used in all Plymouth's tapes and that the sole plasticizer used in the vinyl backing at the beginning was Paraplex G–40, and after the Spring of 1954 Plymouth commenced using as the sole plasticizer Paraplex G–25, both products of Rohm and Haas, and the first sale for commercial use was to Sears, Roebuck and Company (defendant in the Fourth Circuit suit). The affidavits also state that tapes with G–40 and G–25 as the sole plasticizer were the only pressure-sensitive adhesive plastic electric tapes ever made and sold by Plymouth and were the two plastic electric tapes involved in the North Carolina case. "No change whatever has ever been made by way of change of materials or additions of new materials, or otherwise, in the formulas of these two plastic electric tape products, and the tape products now made and sold by Plymouth under the trademark *Slipknot*, the trademark adopted for these products, the first of this (1958) year, are and always have been products made of these same formulas without change."

The affidavit of Fenn, sales manager of Plymouth, states that "Slipknot" theretofore applied to Plymouth's other tapes, was, in November, 1957, decided to be applied to this tape, that they had a national advertising campaign and the advertiser got out misleading advertisements which were later countermanded and destroyed and the copy changed to indicate the name and not the product. When Slipknot was adopted as the trademark "no change was made in the product, which has continued to be the same product previously sold as Plymouth's plastic electric tape. * * * All Plymouth's commercial * * * tape is and always has been made with G–40 as the sole plasticizer. Only specification tape—tape made on specification for the Government * * * or utilities * * * is made with G–25 as the sole plasticizer."

Plaintiff's affidavit by Kinney, its attorney both in the Fourth Circuit case and the instant case, states that as early as January, 1958, defendant Plymouth advertised its "Slipknot Plastic Tape" labeled a "new" tape "never before a plastic tape like this" and also that "ZF.-90 makes the difference." The affidavit declares also that no affidavit on behalf of defendants states the tapes involved in this and in the Fourth Circuit case to be "identical" and assumes that G–25 and G–40 have not changed, whereas Rohm & Haas Company's (the manufacturer) literature states the plasticizers may be "tailored" to fit the need and use. The Kinney affidavit goes on to challenge the Fourth Circuit Court of Appeals' finding that there was no "significant" change in G–25 or G–40 since it was first offered for sale, because the Court's statement was based on a letter of counsel and therefore hearsay and contrary to the evidence adduced in that case. Kinney states that literature of Rohm and Haas, disclosed in a deposition in the Fourth Circuit case, revealed a change in the viscosity and power factor in G–25 between 1947 and 1953, and in the viscosity in G–40 for the same period.

The affidavit of Dr. Rathmann for plaintiff reveals he conducted research on the plasticized in Plymouth's Slipknot tape, as of September, 1958, and he states as a fact that it has a substantial content of non-resinous material in it. Further, he states the plasticizer in said tape cannot properly be characterized as "entirely resinous"; neither can it correctly be said that " 'every part and portion' of such plasticizer is of the 'resinous type.' Such plasticizer, as shown by * * * analysis, contains much low molecular weight material. Upwards of twenty per cent of the plasticizer used in making the 'Slipknot' plastic electrical tape, based upon * * * said analysis, is resinous; rather, it is fluid and of low-molecular weight."

It is clear, therefore, from these affidavits that Plymouth made no change whatsoever in the resinous plasticizers G–25 and G–40 it used in making the product which was held not to infringe in the Fourth Circuit suit, and the product charged by the *instant complaint* to infringe. It is self-evident, however, dehors affidavits that the product of Plymouth, passed upon in the Fourth Circuit suit, filed only a day before the instant suit, was the same product here charged to infringe. No one intimates there was a change in Plymouth's tape or resinous plasticizer, G–25 or G–40 in that single day. In fact, the only possibility of change in the plasticizer which the affidavits may be said to reveal is that which may have occurred in late 1957 and early 1958 when concededly the name of the brand of the product was changed and plaintiff's chemist Rathmann's analysis intimates the plasticizer could not be characterized as "entirely resinous" and contained much "low molecular weight material" and was "fluid."

The Court is of the opinion from a reading of the two opinions of the Fourth Circuit that any of the asserted and alleged changes which may have been made in Plymouth's product were passed upon by that Court, precluding this Court's review thereof as between the same parties. Be that is it may, however, there is no question but that as of the time of the filing of the instant complaint the product of Plymouth here charged to infringe was the same product passed upon by the Fourth Circuit and found non-infringing. The Court, therefore, concludes it has been judicially determined that as of the time of the filing of the instant complaint, Plymouth made no infringing product, and the complaint, therefore, states no cause of action as a matter of law.

The bases for the allowance of this motion for summary judgment are:

The Fourth Circuit suit determines that the Plymouth product did not infringe plaintiff's patent, as of the date of the filing of that suit, which antedated the instant suit by one day;

Plymouth's product passed upon in the Fourth Circuit suit is the identi-

cal product charged in this complaint to infringe;

Such change as allegedly may have occurred in Plymouth's product transpired after the filing of the instant suit;

There being no infringement by defendants' product of plaintiff's patent prior to the institution of this suit, the complaint is fatally defective and cannot be cured by subsequent acts constituting infringement, and

If a change (other than in the product's name) occurred in the composition of the plasticizer, such change was passed upon by the Fourth Circuit and decided not to constitute an infringement by plaintiff.

■ The recent filing on January 8, 1959, by defendants, of a suit for declaratory judgment in the District Court in Massachusetts is not the equivalent of an admission of the existence of a "genuine issue of fact" so as to preclude the granting of this motion for summary judgment. As defendants point out, that suit only concerns Plymouth's product in the form it may have taken subsequent to the filing of the instant suit. Furthermore, the basis of a declaratory judgment action is an "actual controversy" which may raise legal issues as well as factual so that there could not be said to be any admission of a "genuine issue of fact" by virtue of filing of a declaratory judgment suit.

■■ The law is well settled that the existence of a cause of action is to be tested as of the time of the filing of the complaint and no recovery may be had if no cause be shown to exist at that time (Bonner v. Elizabeth Arden, Inc., 2 Cir., 1949, 177 F.2d 703; Porter v. Senderowitz, 3 Cir., 1947, 158 F.2d 435; Hull v. Brandywine Fibre Products Co., D.C. Del.1954, 121 F.Supp. 108; American Bonding & Trust Co. v. Gibson County, 6 Cir., 1906, 145 F. 871; Chicago Grain Door Co. v. Chicago, B. & Q. R. Co., C.C.Ill.1905, 137 F. 101; Bowles v.

Senderowitz, D.C.Pa.1946, 65 F.Supp. 548). This same principle is applicable to suits for patent infringement, and if no act of infringement occurred prior to the filing of the complaint, it is fatally defective (Westinghouse Air Brake Co. v. Christensen Engineering Co., C.C.N. Y.1903, 121 F. 558; Lambert v. Dempster Bros., Inc., D.C.Tenn.1940, 34 F. Supp. 610; Humane' Bit Co. v. Barnet, C.C.N.J.1902, 117 F. 316; Slessinger v. Buckingham, D.C.Cal.1883, 17 F. 454; Rohm & Haas Co. v. Permutit Co., D.C. Del.1953, 114 F.Supp. 846; See also Andrew Jergens Co. v. Bonded Products Corporation, D.C.N.Y.1926, 13 F.2d 417) and cannot be cured by infringement occurring subsequent to the filing of the complaint (Rohm & Haas Co. v. Permutit Co., D.C.Del.1953, 114 F.Supp. 846). In the last cited case it was said at page 848:

"The general rule of law is that a plaintiff's right to recovery depends upon his right at the inception of the suit and the non-existence of a cause of action when the suit is brought is a fatal defect which cannot be cured by the accrual of a cause of action pending suit."

The rule is stated thus in 69 C.J.S. Patents § 310, p. 890:

"The owner of a patent has a right of action for the unlawful invasion of his patent rights by an infringement, but *judicial relief is dependent on the existence of the cause of action at the time of commencement of suit.* * * *

"Judicial relief in an action involving infringement of a patent is dependent on the existence of a cause of action at the time when the suit is commenced. *It is essential to a cause of action for infringement of a patent that an act of infringement shall have been committed prior to the institution of the suit.* * * *" (Emphasis ours.)

■ This court concludes that the holding of validity and infringement of the North Carolina District Court in No.

879G, to which suit Plymouth was not a party, is inoperable in barring the *res judicata* effect of the Fourth Circuit decision reversing the companion case of No. 878G. Walker on Patents, Deller's Ed., Vol. III, p. 1993; Triplett v. Lowell, 297 U.S. 638, 645, 56 S.Ct. 645, 80 L.Ed. 949; S. H. Kress & Co. v. Aghnides, 4 Cir., 1957, 246 F.2d 718, 720, certiorari denied 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189.

These few quotations from the Fourth Circuit's opinions are sufficient to show that the same charge of change of the plasticizer was raised and determined adversely to Minnesota Mining and Manufacturing Company (from the opinion dated October 18, 1957, 249 F.2d 66, on rehearing):

"* * * it was further shown at the trial that there had been no significant change in either G–25 or G–40 since these materials were first offered for sale." (at page 67)

"* * * even if the new evidence should demonstrate the alleged change in the composition of G–25, the decision of the Court would necessarily be retained. This is so because G–25, although changed to contain a larger quantity of low molecular weights, would nevertheless be a resinous plasticizer and would not be composed partly of a resinous and partly of a liquid plasticizer in accordance with the teaching of the patent." (at page 67)

"* * * 'Even if it be supposed that the composition of G–25 has been so changed as to contain a larger number of molecules of relatively low weight than the G–25 produced during the experimental period, and that by reason of this change it is now possible to use resinous material as a sole plasticizer, its use in making an insulating tape would not constitute infringement, because the plasticizer would still be completely resinous whereas the patent teaches that a liquid as well as a resinous plasticizer must be used.'" (at page 68)

(The original opinion, January 15, 1957, 243 F.2d 136):

"* * * It is of far greater importance to note that there is positive and direct testimony on the part of Rohm and Haas, who supplied G–25 and G–40 to both parties in the pending case, that there has been no significant change in G–25 since it was first put on the market * * *." (at page 143)

"* * * Even if it be supposed that the composition of G–25 has been so changed as to contain a larger number of molecules of relatively low weight than the G–25 produced during the experimental period, and that by reason of this change it is now possible to use resinous material as a sole plasticizer, its use in making an insulating tape would not constitute infringement, because the plasticizer would still be completely resinous whereas the patent teaches that a liquid as well as a resinous plasticizer must be used * * *." (at pages 143–144)

The Court concludes that there is no "genuine issue [of] fact" to be determined under the pleadings in this cause, and, therefore, under Rule 56 and the decisions (Magee v. Coca-Cola Co., 7 Cir., 1956, 232 F.2d 596; Prepo Corp. v. Pressure Can Corp., 7 Cir., 1956, 234 F.2d 700; Davison Chemical Corp. v. Joliet Chemicals, 7 Cir., 1950, 179 F.2d 793; Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir., 1956, 233 F.2d 9; Lewis v. Quality Coal Corp., 7 Cir., 1957, 243 F.2d 769), the motion of defendants for summary judgment should be granted.